(218) The Judges not agreeing upon all the points involved in the cause, delivered separate opinions, as follows:
The tax imposed on stock in the Bank of New Bern has been paid, from the year 1816 to the present time, out of the corporate funds. The information seeks to keep the sums paid to the State, and alleging that the tax was payable exclusively out of the separate interest of the private stockholders, seeks to correct the supposed error by charging to them, in the division of the capital, and giving credit to the State for, the proportion of those sums raised out of her stock.
The tax is due under a provision of the new charter of 1814 (Rev., ch. 870), by the 11th section of which it is enacted "that a tax of one per cent per annum shall be levied on all stock holden in the bank except the stock holden by the State, which shall be paid to the Treasurer by the president or cashier of said bank on 1 October in each and every year." It may here be mentioned that the printed statute book is inaccurate in substituting the work "stockholders" for the two words, "stock holden," which appear in the original roll.
The doubt is whether, on the wording of the charter, the tax is payable by the corporation out of the common fund, the number of private shares being the measure of the tax, or whether it is payable out of those private shares only, so as to make each stockholder severally contribute annually to the public treasury one dollar for each share.
I own that the language of the statute is not so clear to the contrary that I could confidently say, were the construction now to be placed on it for the first time that the one contended for on behalf of the State was not according to the intention of the Legislature. It is possible that such was the meaning. But I do not think that a strained construction is allowable of an act which levies money from the citizen. The amount of the levy, the subject of it, and the method of raising it ought to be so plainly pointed out as to avoid all danger of oppression by an erroneous interpretation, and where there is a fair (219) doubt the citizen should have the advantage of it.
Here the difficulty arises from the silence of the act as to the fund out of which the tax shall be paid. The natural construction of a charter creating a corporation, a new artificial being, is that all the privileges conferred, all the duties declared, and all the burdens imposed, relate to that being as a whole, and not to the individuals composing it. The contrary may be enacted it is true, but it ought to be clearly enacted before the corporators, as natural persons, can be affected. Here it is insisted that, as the tax is to be "levied on" the private stock, it is necessarily to be "raised on or out of" that stock. The argument is so plausible as at the first view to have much weight, *Page 177 
and would be satisfactory were it not for other provisions in that section and others of the charter. The payment into the Treasury is to be made by the president or cashier in their official characters. Those terms of description are naturally to be referred to the official character, and not to the persons in their natural capacity who happened to hold those places. But what renders the meaning clear is that there is no clause of distress on any property of the several stockholders, nor any means provided of raising the tax except from funds that would be under the control of those persons as officers, and not otherwise. What fund belonging to the stockholders, as the separate property of each, is within the reach of the cashier and president? The profits annually declared and passed to the credit of the stockholder, and those only. The stock itself and all the surplus undivided is a common joint stock under the exclusive direction and power of the board of directors, and the interest of each stockholder in that fund is ideal and intangible, not accessible to the officers or to any fiscal agent of the State, except through the intervention of the corporation itself. When a dividend of profit is declared that becomes separate property, and might be appropriated under the authority of law to the satisfaction of any demand upon the owner. If the charter had said the tax of one per cent on each share should be paid out of the profit on each share declared to the stockholders, it would have been clear, and the fund thus rendered liable would have been a proper one and within (220) the reach of the officers charged to collect and account for it. It is possible, but hardly probable, that the Legislature, without closely considering the subject, might have expected a continued and certain profit and its periodical division, and therefore have intended that the tax should attach to it as soon as it was declared. But the consequence of that construction would be that unless there was a profit there would be no tax, for it could not be raised unless the fund existed out of which it was, according to the meaning of the act, to be satisfied. Perhaps that might have been the proper interpretation at first of this ambiguous statute, for it seems to be consonant to natural justice. But the contrary has been practically insisted on by the State, and is now insisted on in argument. The tax has been paid every year, whether profit were made or not; indeed it has been paid when, so far from making a profit, a large part of the capital has been sunk, as we know from the statements of the fiscal officers of the State and the proceedings of the Legislature. Besides, the words of this section of the act are that the tax "shall be paid in each and every year," which seems to overrule the implied meaning that it is payable out of the profits alone, and to require positively that the sum due for the tax, according to the measure prescribed in the act, shall be paid at all events. *Page 178 
If that be admitted, then the question arises, how it is to be paid when there is no profit. I do not state the question in that shape for the purpose of determining how the money is to be raised in the two cases, when there are profits and when there are none, as if it was to be raised differently in the one or the other, but as the criterion of the proper construction as to the proper fund for raising it in every case. It has already been shown that it is payable, whether there be profits or not; and, therefore, the construction must be that it is not payable out of the profits as profits, and does not attach to them. If not attached to them after they are declared, nor to any other property of the individual stockholder, it seems to follow, as a necessary consequence, (221) that the tax is to be paid out of the corporate property, whether capital or profit, while it is a joint fund; for to that fund alone can the president and cashier have access. They are to pay the tax. Whence is it to arise? It has been shown that it is not out of the separate property assigned to each shareholder. It is impossible that it can be out of the capital share itself, because that is not tangible by those persons, either in their official or natural capacities. It must then be out of the funds in their hands, and as they are in their hands — that is, the corporate property. With respect to that fund, it is immaterial whether it consists of principal and profit, or of principal alone; for the whole effects of the corporation must answer all burdens on the corporation. When there are two funds out of which the tax might have been raised, or may be supposed to have been intended by the Legislature to be raised, and it is doubtful, upon the words, which is meant, it seems to be a just rule of construction, when the act commands particular official persons to pay the tax, that the fund within the power of those officers is the proper fund — is the one meant, and the one not within their power as officers was not meant. But it is said those officers are spoken of as representing the corporation, and that in fact the corporation itself is responsible for the tax and for the payment out of the proper fund. That may be admitted. It may be true that if the officers made default in paying the tax, the bank would have to make it up. But it would recur out of what fund? Plainly, out of that which was chargeable from the first with it. Then, what remedy would there be against the corporation? When a corporation, as such, is liable for money, it must answer out of the corporate funds, and the process is to distrain or sell the common property, which, in this case, would result precisely in accordance with what has been done. Doubtless, also, a mandamus would lie to compel the corporation in a general meeting of the stockholders, and, through their ordinary organs, the board of directors, to make such orders upon their officers as would set apart a sufficient sum out of the proper fund to satisfy the demand of the State, *Page 179 
whether it be for the tax or her share of the profits; and that sum thus set apart could be reached without further process against the corporation directly. But the question would still be the (222) same, Which is the proper fund? Proceeding against the corporation to compel its creation, or its being set apart, would not change the source from which it is to spring. Such a proceeding would be only to enforce the corporators not to withdraw from the officers the means they were expected to have and would have of answering the tax, and not to make the tax payable out of a fund which never was accessible to those persons in their designated official characters. But further, the argument for the State would necessarily lead to this — that the shares of stock would be unequal. For if it be true that bymandamus or by proceedings in equity the corporators may be compelled to order their officers to pay the tax out of the separate shares of the stockholders, then, when there is no profit declared and none in fact, the payments must be out of the capital of the share itself. This is so obviously inconvenient and impolitic, and so clearly against the general scope of the charter, as to condemn the construction. The shares are made one hundred dollars each, and the profits are to be equally divided. The diminution of some of the shares would discredit the bank and render the security of noteholders and other creditors precarious, or throw the burden of them on the State, and would make it almost impracticable to keep the accounts with simplicity and correctness amongst such a number of unequal proprietors. Besides, the stock itself is made transferable, and passes in the course of business almost like money; and as it could not be seen from the certificate how far the capital had been reduced, all assignments would be at an end or purchasers exposed to great frauds. It is no answer to say that purchasers must take cum onere. That is true with respect to liabilities of the corporation. But it is not true within the contemplation of the charter, in respect to the liability of each corporator. The bank itself and the State cannot, against the express terms of the certificate, say that the share of stock is not one hundred dollars, as between the shareholders themselves. They cannot say that the former proprietor has withdrawn a part of his capital, but that, notwithstanding, the bank was compelled by law to certify to him falsely that (223) his payment had been full and yet remained full. The Legislature could not intend to authorize a fraud so palpable and base.
I conclude, therefore, from a consideration of the whole act — as the tax is not payable out of the profits as such declared to each individual; as it is not payable out of the other separate estate of the holder; as it is not payable out of the separate capital of each stockholder, because that cannot be reached by the collecting officers, and *Page 180 
because, if reached through the corporators, it would render the shares of unequal value, diminish the capital, and be a fraud on purchasers; as it is payable at all events every year — that for all these reasons it is payable out of the common funds in the hands of the officers as such, whether those funds consist of capital or of profit. There is no other plausible or admissible construction but the one, that the divided profits is the proper fund and that the Legislature deemed them certain, and therefore considered that each stockholder would permanently have a separate property from which one dollar on his share could be raised annually. Such an expectation on the part of the General Assembly cannot be supposed without imputing the grossest ignorance to that body, for all know that banking is not only a hazardous business, but that in this State large portions of the capitals have actually been lost. But if the supposition were true, it would only prove by inference that the construction of the act is that the tax is payable out of such profits, which is rebutted by the express provision for a payment every year at all events. Besides, the information does not proceed at all upon the idea that profits have been annually declared out of which the tax might have been paid, and seek to recover out of them; but it seeks to have a larger share of the capital than the other stockholders in the division now making, upon the notion that the tax has been paid, and was, if necessary, payable out of the capital, and that a portion of her capital as composing a part of the joint stock has been improperly thus applied. The incorrectness of that view has already been shown.
Besides the reasons for our opinion drawn from the provisions (224) of the act itself, a most forcible one arises out of the contemporaneous construction put on the act by the stockholders, the fiscal agents of the State, and the Legislature. The State is the largest shareholder in the bank, represented in general meeting, and entitled through her officers to quarterly statements of the affairs of the corporation, and to inspect all general accounts on the books. The mode of payment therefore must have been known. The default of her officers and of the Legislature itself would not bar the State of a clear right, but such default is not to be presumed. Their acts cotemporaneously, and continued consistently through a period of eighteen years, are such strong proof of the sense in which the act was understood by those who passed it as to make their construction almost as authoritative as if the words admitted of no other.
Having arrived at this conclusion as to the meaning of the charter, it is unnecessary to consider what relief could be had were the act to be otherwise interpreted against the present proprietors, in respect of the taxes of former years, and of bygone profits received by former proprietors. It would be difficult to strike out of the case one spark *Page 181 
of equity against the present holders under that aspect of the case. But I do not think it necessary to go into that question, especially as the information is filed against the corporation and not against the individual corporators. The decree must be reversed and the demurrer sustained.
GASTON, J., concurred with the Chief Justice.