STATE v. JESSIE C. BARBER.

(Filed 17 November, 1920.)

1. **Taxation—Automobiles—License—Principal and Agent—Statutes.**

    Chapter 90, sec. 72, Public Laws of 1919, requiring a license tax of five hundred dollars from manufacturers, or from corporations or persons offering for sale, etc., auto-vehicles in this State, authorizing such as have paid the tax to employ an unlimited number of agents to sell the machine designated in the license, upon a duplicate license issued with the agent's name therein on the payment of a fee of five dollars for each agent, was not intended to, and does not include a dealer in second-hand automobiles, but only contemplates the payment of the tax and the taking out of a license by the manufacturer, or in default thereof, by the dealer in new automobiles, with the right of the latter, in so doing, to appoint agents in the same manner and to the same extent as the manufacturer was authorized upon the payment of the five hundred dollar tax as provided by the statute.

2. **Statutes—Doubtful Meaning—Courts— Validity— Licenses— Automobiles—Taxation.**

    It is a rule of statutory construction that the courts are inclined against an interpretation that will render a law of doubtful validity, and *quaere*, as to the validity of a statute giving to a manufacturer, or others, the exclusive privilege of selling any special make of automobiles after the same has been acquired and used by independent purchasers.

3. **Same—Amendments—Criminal Law.**                 ;

    Construing ch. 90, sec. 72, Public Laws of 1919, with the act subsequently passed at the Special Session of the same year, adding a provision for licensing second-hand dealers in automobiles when the manufacturer's tax of five hundred dollars has been paid and fixing the fee at fifty dollars, evidences the intent of the former law that taxing second-hand automobiles was not included in its provisions, though not applicable to the indictment in the present case, the alleged offense of selling a second-hand automobile without the license having been committed before the passage of the amendment.

4. **Statutes—Amendments—Taxation—License—Automobiles.**

    Section 85, ch. 90, Public Laws of 1919, making it a misdemeanor for any one engaging in any business or practicing any profession for which a license is required by the Act, by its express terms and accepted interpretation applies only where a license is provided for in other portions of the law, and not to the sale of second-hand automobiles, not included within the intent and meaning of sec. 72 of the same chapter.

5. **Verdicts— Special Verdicts— Findings— Inferences— Criminal Law—Judgments.**

    A special verdict on the trial of an action charging the defendant with violating the provisions of ch. 90, sec. 72, by engaging in the business of selling automobiles without a license, is defective when it does not find that the defendant was engaged "in the business of selling the same in the State," and a conviction cannot be sustained thereon, under the principle

that such verdict must find sufficient facts to permit of the conclusion of law upon which the judgment rests, and that the trial judge is not permitted to find any fact, or inference of fact, necessary to the determination of the issue of guilt or innocence. *S. v. Allen*, 166 N. C., 267, cited and applied.

WALKER, J., dissenting in part.

CRIMINAL ACTION, tried on appeal from recorder's court, before *Ray, J.*, at June Term, 1920, of ROCKINGHAM.

Before recorder, the jury rendered a special verdict, as follows:

"In this case the jury finds the following facts: The defendant made application to the State Treasurer of North Carolina for license to sell second-hand Ford automobiles, the Ford Automobile Company, the manufacturers of said Ford cars having already paid the license of $500 to do business in the State of North Carolina, as required by section 72, chapter 90 of the Public Laws of 1919, and tendered the license tax required by law. The State Treasurer refused to issue the license so applied for solely on the grounds that the Ford Motor Company of Detroit, Michigan, the manufacturers of said cars, had instructed him not to issue said license.

That the defendant, Jessie C. Barber, subsequent to said application for license, sold a second-hand Ford car, which he purchased for sale to Lester Somers, and received the money therefor. The defendant had no license to sell Ford cars at the time of said sale.

"Upon the foregoing facts, if the court being of the opinion that the defendant is guilty, the jury find him guilty; if the court be of the opinion that the defendant is not guilty, the jury find him not guilty."

Upon these facts, the recorder, Hon. I. R. Humphreys, being of opinion that defendant is not guilty, it was so adjudged. ·

On appeal the verdict and judgment of acquittal was affirmed, and the State appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. M. Sharpe and Glidewell & Maberry for defendant.*

HOKE, J. The portion of the statute more directly applicable to the question presented, Public Laws of 1919, sec. 72, is as follows:

"Every manufacturer of automobiles engaged in the business of selling the same in this State, or every person or persons or corporation engaged in selling automobiles or automobile trucks in this State, the manufacturer of which has not paid the license tax provided for in this section, before selling or offering for sale any such machine, shall pay to the State Treasurer a tax of five hundred dollars and obtain a license

for conducting such business. Any applicant for a license shall furnish the State Treasurer with the names of every class or style of machine offered for sale with a written application for the license. The State. Treasurer shall, upon the written application of any one who has obtained the license provided in this section, and the payment of a fee of five dollars, issue a certified duplicate containing the name of the agent representing the holder of the license, which gives him the privilege of doing business as the agent of the holder of the license. Every one to whom license shall have been issued as provided in this section shall have power to employ an unlimited number of agents to sell only the machine designated in the license upon the payment of the tax aforesaid. Each county may levy a tax of five dollars on each agent doing business in the county. It shall be the duty of the State Treasurer to have this section printed on the face of each license issued under this act for the information and protection of parties to whom the same may be issued."

It thus appears that any manufacturer of automobiles, on the payment of $500, shall be licensed to sell his machines anywhere in the State, and shall have the privilege of designating any number of agents for the purpose who may obtain a certified duplicate of the license showing the name of the agent, and for which a fee of five dollars is allowed. And where the manufacturer has not seen proper to take out a license, any dealer may do so on payment of the $500, and shall thereupon have the same privilege of designating the agents who may operate under the license obtained by him. From a careful perusal of the section, we are of opinion that it is the purpose and policy, and by correct interpretation the true meaning of the law to provide for licensing the business of selling automobiles at first hand, either by the manufacturer, or by a dealer necessarily operating under a contract or arrangement with the manufacturer, and that the business of selling second-hand automobiles is not contemplated or provided for in the original statute. It is among the accepted rules of statutory construction that the courts are inclined against an interpretation that will render a law of doubtful validity, and there is question if the General Assembly could enact a statute giving to a manufacturer or other the exclusive privilege of selling any special make of cars after the same had been acquired and used by an independent purchaser. We are further confirmed in our view of the law that the same Legislature of 1919, at its special session amended the section we are considering by adding a provision for licensing independent second-hand dealers in automobiles when the manufacturer's tax of $500 had been paid, and fixing the fee for same at $50. This amendment, however, was enacted and ratified on 26 August, 1920, after the occurrence set forth, and established in the special verdict, and may not directly affect the guilt or innocence of the defendant on the facts

presented.  We are not inadvertent to the general language of section 85 of the statute to the effect that any one who engages in any business or practices any profession for which a license is required by this act, without having procured a license therefor, shall be guilty of a misdemeanor.  This, by its very terms and accepted interpretation, applies only to cases where a license is provided for in other portions of the law, and the statute as it prevailed when the defendant did the act specified not extending to a dealer in second-hand machines, defendant's conduct does not come under the condemnation of this, the punitory clause of the law.  It is, furthermore, the accepted position with us that a special verdict, as a matter of correct procedure, shall set forth all the essential facts required to establish a defendant's guilt.  As said in *S. v. Allen,* 166 N. C., at page 267: "The guilt or innocence of the defendant must follow as a conclusion of law from the facts found in a special verdict, which refers to the decision of the judge any fact or inference of fact necessary to a determination of the issue will be set aside."  Under this principle, the verdict in the instant case would seem to be defective in that the jury have not found that the defendant has been engaged in the business of selling second-hand automobiles, but only certain specified facts from which the ultimate fact might be inferred.  As the case is of public moment, however, involving the construction of a clause in the general revenue law, we have preferred to deal with it upon its merits.  On the record we are of opinion that defendant has been properly acquitted, and the judgment to that effect is affirmed.

No error.

WALKER, J., concurring in result:  The defect in the special verdict will justify the decision of the Court, but I do not concur in the reason given for it, that by the statute the defendant was not taxable.

The purpose of the Legislature in enacting Public Laws of 1919, ch. 90, sec. 72, was to protect all agents of those manufacturers of automobiles, who had applied for and received a license to sell them in the State, but it was not intended that his license should extend to those engaged in such business of selling automobiles on their own account and independently of the manufacturer.  Such persons are not selling under him or connected with him in any way, but, on the contrary, they are selling in opposition to him, and are his competitors and rivals in business.  It was therefore provided that, where any person or corporation engaged independently in the business of selling automobiles for which privilege the manufacturer of the automobiles has not paid the license tax, he shall pay to the State Treasurer a tax of $500, and himself obtain a license for conducting such business.  It was clearly in-

tended that no one shall sell under the manufacturer's license unless he is his agent. The State Treasurer is authorized to issue a certified duplicate only to the "agent or representative" of the manufacturer, "which shall give him the privilege of doing business *as the agent* of the licensee." But not so with the second proposition, for if the manufacturer has not paid the license fee where one, not his agent, is about to engage in the business of selling his automobiles, or those of any other manufacturer, the person so proposing to engage in such business shall pay it. If this is not true, then two persons, not connected in business, can sell the same kind of automobiles under one license, even though they be competitors or rivals in business. Surely the Legislature did not contemplate this result. The independent seller may, under such a construction, and under certain circumstances, enjoy a more valuable privilege than the manufacturer, and pay nothing for it. My conclusion is that the business of the independent dealer is taxed, if not expressly, then by the clearest and most manifest implication, which is sufficient. The defendant offered to pay the tax, but the manufacturer protested against its being received, and the State officer desisted. The ground of the manufacturer's opposition was, though he may not have stated it, that it would bring the defendant into competition with him and destroy his monopoly, now grown, as we all know, to enormous proportions.

The special act of 1920 is of no significance, except as showing that, in the opinion of the Legislature, such a business as that of a dealer in second-hand machines should be subject to the privilege tax, but that the amount of $500 was too much, under the circumstances, as the business, from its nature, is somewhat localized, though it may spread out. The rule as to legislative construction does not apply here, as this was not a construction at all, but a change of the law (*Stockdale v. Ins. Co.,* 20 Wallace (U. S.), 331; *Koshkoning v. Burton,* 104 U. S., 668), and the construction was not of long duration and settled on, but of recent date. *Attorney-General v. Bank,* 21 N. C., 216; *Attorney-General v. Bank,* 40 N. C., 71. The larger tax was intended for those who dealt through agents, and covered a wide territory. The general license protected each agent by the payment of a small additional tax taken out in his name by the principal, but the State license of the latter did not protect third parties, who were not selling for him. The manufacturer, therefore, had not taken out a license which protected the defendant's business, within the meaning of the words of the statute. It would be singular if the Legislature intended to leave so large and well known a business untaxed, or exempt from the privilege tax.