IN THE MATTER OF: CRAIG ALLEN ARTHUR

No. 125

(Filed 31 January 1977)

1. Statutes § 4— construction — avoidance of unconstitutionality

Where one of two reasonable constructions of a statute will raise a serious constitutional question, the construction which avoids this question should be adopted.

2. Constitutional Law § 31; Infants § 10; Narcotics § 3— report of analysis for narcotics — admission statute — inapplicability to juvenile delinquency proceedings

The statute rendering the written report of the chemical analysis of matter in certain laboratories to determine whether it contains a controlled substance admissible as evidence of the truth of the analysis "in all proceedings in the district court," G.S. 90-95(g), does not apply to juvenile delinquency proceedings, which are not appealable to the superior court for trial de novo, but applies only to district court criminal proceedings which, in felony cases and in some juvenile cases, involve determinations only of probable cause and in which, in misdemeanor cases, an appeal of right to the superior court lies for a trial de novo; that is, the statute applies only to criminal proceedings in which an opportunity for confrontation and cross-examination of the chemist who performed the analysis is assured ultimately in the superior court. G.S. 7A-285.

THIS case comes to us on petition for discretionary review under General Statute 7A-31 of a decision of the Court of Appeals reported in 27 N.C. App. 227, 218 S.E. 2d 869 (1975), affirming a district court adjudication of petitioner as a delinquent juvenile. Docketed and argued as No. 27 at the Spring Term 1976.

*Rufus L. Edmisten, Attorney General, by John M. Silverstein, Special Deputy Attorney General, for the State.*

*Wheatly & Mason, P.A., by L. Patten Mason, Attorneys for Juvenile Petitioner.*

EXUM, Justice.

One question presented here, our answer to which is determinative of the case, is whether General Statute 90-95(g) applies to proceedings leading to an adjudication of juvenile delinquency in the district court. The statute provides:

"Whenever matter is submitted to the North Carolina State Bureau of Investigation Laboratory, the Charlotte,

North Carolina, Police Department Laboratory or to the Clinical Toxicological Lab, North Carolina Baptist Hospital, Winston-Salem for chemical analysis to determine if the matter is or contains a controlled substance, the report of that analysis certified to upon a form approved by the Attorney General by the person performing the analysis shall be admissible without further authentication in all proceedings in the district court division of the General Court of Justice as evidence of the identity, nature, and quantity of the matter analyzed."

Relying on this statute, the district court allowed into evidence against the juvenile over objection a written report proper in form of an SBI laboratory analysis which concluded that certain "green vegetable material" found in his possession was in fact marijuana. The chemist who performed the analysis was not present and did not testify. The juvenile was found to have violated the Controlled Substances Act and was adjudged to be a delinquent child.

On appeal to the Court of Appeals the juvenile contended that if General Statute 90-95 (g) applied to this proceeding it was unconstitutional in that it denied him the right to confront and cross-examine the chemist who performed the analysis. He relied on the Confrontation Clause of the Sixth Amendment of the United States Constitution and similar language in article I, § 23, of the North Carolina Constitution. The Court of Appeals determined the constitutional issue adversely to the juvenile.

We hold that General Statute 90-95 (g) was not intended to apply to proceedings which result in adjudications of delinquency in the district court. We, consequently, do not reach the constitutional issue decided by the Court of Appeals and express no opinion regarding the correctness of that Court's resolution of it.

[1] The pertinent maxims of statutory interpretation are well established. The intent of the legislature is controlling. *Stevenson v. City of Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972) ; *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22 (1967). In ascertaining this intent, the Court should consider the act as a whole, *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972), weighing "the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Steven-*

*son v. City of Durham, supra* at 303, 188 S.E. 2d at 283. "Words in a statute are to be given their natural, ordinary meaning, unless the context requires a different construction. *Byrd v. Piedmont Aviation, Inc.*, 256 N.C. 684, 124 S.E. 2d 880." *In re Watson*, 273 N.C. 629, 635, 161 S.E. 2d 1, 7 (1968). Lastly, and most pertinent, are these maxims: "[W]hen there are two acts of the legislature applicable to the same subject, their provisions are to be reconciled if this can be done by fair and reasonable intendment . . . . " *Highway Commission v. Hemphill, supra* at 539, 153 S.E. 2d at 26. Where one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be adopted. This Court recently said in *In re Dairy Farms*, 289 N.C. 456, 465-66, 223 S.E. 2d 323, 328-29 (1976):

> "If a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such question, it is well settled that the courts should construe the statute so as to avoid the constitutional question. *Milk Commission v. Food Stores*, 270 N.C. 323, 331, 154 S.E. 2d 548 (1967) ; *State v. Barber*, 180 N.C. 711, 104 S.E. 760 (1920). In *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, 1361 (1936), the Supreme Court of the United States said: 'The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. *Even to avoid a serious doubt the rule is the same.'* See also: *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1931) ; *Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786 (1924) ; *Re Keenan*, 310 Mass. 166, 37 N.E. 2d 516, 137 A.L.R. 766, (1941)." (Emphasis added.)

[2]    While the statute, by its terms, refers to "all proceedings in the district court division" we, applying the maxims of construction set out, are confident that the legislature at the time of its enactment had in mind the great majority of district court criminal proceedings which, in felony cases and in some juvenile cases, involve determinations only of probable cause and in which, in misdemeanor cases, an appeal of right to the

superior court lies for a trial *de novo.* In all these proceedings an opportunity for confrontation and cross-examination of the chemist is assured ultimately in superior court.

We think it significant that General Statute 90-95 (g) is the last subsection of a statute which creates and defines *criminal* violations and penalties under the Controlled Substances Act. Every *criminal* proceeding under that statute in district court would be either a preliminary hearing if the crime were a felony, or, if a misdemeanor, a trial from which an appeal of right would lie for trial *de novo* in the superior court. The policy underlying General Statute 90-95 (g) is obviously one of convenience to the state. By permitting the written report of the chemical analysis to serve as evidence of the truth of the analysis itself the statute relieves busy SBI and other chemists from having to spend time traveling to and from courthouses throughout the state for the purpose of testifying. Since juvenile proceedings such as that here under consideration comprise a very small percentage of the total volume of business in the district courts, our view of the legislative intent is consistent with this policy.[1] In Article 23 of Chapter 7A, moreover, which prescribes the procedures for juvenile adjudication, the legislature has explicitly mandated the preservation of "the right to confront and cross-examine witnesses." G.S. 7A-285. Construing the statute in question and General Statute 7A-285 *in pari materia* leads logically to that view of the legislative intent which we adopt.

Unquestionably if General Statute 90-95 (g) applies to proceedings which result in adjudications of deliquency, a serious question of its constitutionality *as so applied* arises. In such a proceeding the district court is the ultimate fact-finding forum. General Statutes, ch. 7A, art. 23, especially G.S. 7A-279. There is no trial *de novo* in superior court. Appeals from adjudications of delinquency go directly to the Court of Appeals. G.S. 7A-289. Use of General Statute 90-95 (g) may thus effectively deprive the juvenile of ever having the opportunity to confront or cross-examine the chemist who performed the analysis, the

---

[1] In 1975, for example, the latest year for which figures are now available, there were 602,130 misdemeanor cases not counting motor vehicle violation waivers and 28,456 preliminary hearings disposed of in the district court division. There were only 16,168 juvenile delinquency adjudications. Annual Report, Administrative Office of the Courts, at 64, 78 (1975). There is no breakdown in the data according to type of offense, i.e., controlled substance violations, larcenies, burglaries, and the like.

results of which are crucial to the adjudication. The juvenile must either forego this right or, himself, subpoena the chemist.

The Court of Appeals carefully considered the constitutional issue. In a reasoned and well researched opinion it recognized that juveniles in deliquency proceedings were entitled to the constitutional right of confrontation. *See In re Gault,* 387 U.S. 1 (1967); *cf. McKeiver v. Pennsylvania,* 403 U.S. 528 (1971). It concluded, however, that since "[j]uvenile proceedings are somewhat less than a full blown determination of criminality" the scope of the protection of the right of confrontation might not be so broad as in adult criminal proceedings and, further, that the written report in question possessed the "requisite indicia of regularity, trustworthiness, and reliability" so that its introduction was constitutionally permissible. *In re Kevin G.,* 80 Misc. 2d 517, 363 N.Y.S. 2d 999 (Fam. Ct. 1975); *cf. Mancusi v. Stubbs,* 408 U.S. 204 (1972).

We express no opinion upon the correctness of these conclusions other than to note: While not all the provisions of the Bill of Rights are applicable to juvenile proceedings through the Due Process Clause of the Fourteenth Amendment, *McKeiver v. Pennsylvania, supra; In re Gault, supra,* we doubt the validity of the proposition that any applicable provision might nevertheless be given less force or vigor in juvenile proceedings than in adult criminal prosecutions. It was held in *Gault* that the privilege against self-incrimination "is applicable in the case of juveniles as it is with respect to adults." 387 U.S. at 55. Following *Gault,* this Court said in *In re Burrus,* 275 N.C. 517, 530, 169 S.E. 2d 879, 887 (1969), *aff'd sub nom. McKeiver v. Pennsylvania, supra,* "[t]he privilege applies in juvenile proceedings the same as in adult criminal cases." This Court's decision in *State v. Watson,* 281 N.C. 221, 188 S.E. 2d 289 (1972), *cert. denied,* 409 U.S. 1043 (1972), casts some doubt upon the Court of Appeals' reliance on the inherent reliability of the written report. In *Watson,* Justice Branch, speaking for the Court, addressed the constitutionality of the admission of a portion of a death certificate of the victim in a murder trial. The death certificate, admitted under General Statute 130-66, was considered as "prima facie evidence of the facts therein stated" as provided by that statute. The Court, holding that the admission of the certificate violated the mandates of both federal and state constitutions, observed:

> "The right of confrontation confirms the common-law rule that, in criminal trials, the witnesses must be present and subject to cross-examination. . . . The right of confrontation is an absolute right rather than a privilege, and it must be afforded an accused not only in form but in substance." *Id.* at 230, 188 S.E. 2d at 294. (Citations omitted.)

Quoting *People v. Holder,* 230 Cal. App. 2d 50, 54, 40 Cal. Rptr. 655, 657 (1964), the Court added:

> "The point of the matter is not that conclusionary entries on death certificates are necessarily unreliable . . . . The coupling of hearsay and conclusionary elements in a single piece of evidence arouses the more fundamental problem of fairness to the defendant in a criminal case. The cause of death entry may emanate from a complex value judgment drawn by a medical expert. . . . When it rides into the fray mounted on a saddle of a public document, it is unaccompanied by the expert. The latter appears in court only in the form of the document. He himself is not available for cross-examination by the defense." *Id.* at 232, 188 S.E. 2d at 295.

Whether there is an inherent reliability in the report of an SBI laboratory analysis which would save the statute as here applied from constitutional infirmity are serious questions that, because of our view of the legislative intent, we need not address.

The Court of Appeals also relied on what it perceived as a legislative policy to permit by numerous statutes the introduction into evidence of "test results, certified copies of official documents and records, as well as other writings, which, but for statute or decisional authority, would be written hearsay. G.S. 8-34 (Official Writings) ; G.S. 8-35 (Authenticated Copies of Public Records) ; G.S. 8-37 (Automobile Ownership) ; G.S. 8-45.1 (Photographic Reproduction Admissible) ; G.S. 20-139.1(a) (Motor Vehicle Operators Blood Alcohol Content) ; G.S. 106-89 (Fertilizer Analysis). *See, e.g.,* 1 Stansbury's North Carolina Evidence §§ 153-55, 165 (H. Brandis Rev. 1973). The business records doctrine, recognized by statute in G.S. 55A-27.1, is an exception to the hearsay rule applicable to private sector records. 1 Stansbury's North Carolina Evidence § 155 (H. Brandis Rev. 1973)." 27 N.C. App. at 230, 218 S.E. 2d at 872.

A significant difference between all these enactments and General Statute 90-95 (g) is that the former apply to court proceedings generally while the latter is by its terms applicable only to proceedings in the district court. Obviously the General Assembly did not feel that the written report of a laboratory analysis possessed the necessary indicia of reliability to be itself admissible in superior court trials. We believe it must have felt likewise regarding a juvenile proceeding leading to a final adjudication of delinquency.

It was, consequently, error for the district court to admit the report into evidence in this case. Since the report was the only evidence that the material possessed by the juvenile was marijuana, the error was clearly prejudicial. The decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for remand to the District Court of Carteret County for such further proceedings as may be appropriate not inconsistent with this opinion.

Reversed and remanded.