RICHARD D. KAPLAN, M.D., MARGUERITE KAPLAN, JACOB M. KAPLAN, AND DAVID S. KAPLAN, PLAINTIFF-APPELLANTS v. PROLIFE ACTION LEAGUE OF GREENS-BORO, WILLIAM H. WINFIELD, JR., LINDA WINFIELD, RONALD W. BENFIELD, SCOTT ALLRED, STEPHEN MICHAEL BEALL, SETH HINSHAW, ALBERT HODGES, JEFFREY ALEXANDER KENDALL, FATHER CONRAD KIMBROUGH, JULIAN McCLAMROCH, BERNARD McHALE, DUANE RICHARDSON, CANDIDO ROSARIO, A/K/A CANDIDO ROSARIO MATOS, DR. KEITH SCHIMMEL, RONALD STEINKAMP, JOHN THOMPSON, KEVIN WOLPERT, LEIGH ALLRED, KAREN L. BEANE, VIRGINIA BELL, SHARON STEELE CLARK, MARIANA DONADIO, LIBBY DUNSMORE, RHONDA EDMONDS, A/K/A RHODA EDMONDS, THERESA FARLEY, PAMELA FORD ALLISON, YVONNE FORD, HARIETTE GABRIELE, GEORGIA GAINES, ELSIE GALAN, KARIN GRUBBE, DEBORAH HEBESTREIT, DIANNE McCLAMROCH, ELAINE McHALE, REBECCA MORRISON, MONICA POLLARD, CAROL REDMOND, MARTA RICHARDSON, ELIZABETH D. SALTER, A/K/A BETTY SALTER, KIMBERLY SCHIMMEL, ANNABELLE SIMPSON, BETTY STEINKAMP, LYNN THOMPSON, LAUREL TREDDINICK, AMBER WINFIELD, CATHERINE WOLPERT, JOHN DOES XX THROUGH XXVIII, AND JANE DOES XXXV THROUGH XLII, DEFENDANT-APPELLEES.

No. COA95-1065

(Filed 17 September 1996)

### 1. Racketeer Influenced and Corrupt Organizations § 7 (NCI4th)— abortion pickets—private RICO action—pecuniary gain—summary judgment

Plaintiffs failed to proffer sufficient evidence under N.C.G.S. § 75D-2(c) to withstand defendants' motion for partial summary judgment where plaintiffs were a doctor and his family who brought an action under NC RICO against defendants arising from anti-abortion pickets of plaintiffs' personal residence and Dr. Kaplan's place of business. The plain language of the statute, coupled with legislative intent, clearly indicates that the scope of NC RICO is limited to cases where pecuniary gain is derived from organized unlawful activity prohibited under the statute. Assuming that plaintiffs have offered sufficient evidence of a pattern of racketeering activity prohibited by the statute, the record is devoid of any indication that the Prolife Action League of Greensboro (PALG) derived monetary gain from or as a result of the prohibited activities. Plaintiffs failed to establish as a matter of law a causal nexus between PALG's pecuniary gain and defendants' alleged organized unlawful activity under N.C.G.S. § 75D-4.

**Am Jur 2d, Extortion, Blackmail, and Threats §§ 241-259.**

2. **Racketeer Influenced and Corrupt Organizations § 7 (NCI4th)— anti-abortion pickets—private RICO action— damage to property—summary judgment**

Plaintiffs failed to proffer sufficient evidence under N.C.G.S. § 75D-8(c) to withstand defendants' motion for partial summary judgment in an action under NC RICO arising from defendants' anti-abortion pickets of plaintiffs' personal residence and Dr. Kaplan's business because plaintiffs failed to demonstrate any injury or damage to property cognizable under NC RICO. The damages referred to in plaintiff's claim relate to loss of use and enjoyment of their home. Under *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, loss of use and enjoyment of property does not constitute an injury to property under federal RICO; even under the dissent in *Oscar*, plaintiffs' claim fails because the harm suffered by plaintiffs would not be imposed on anyone else who occupied the property as it does not arise from plaintiffs' connections to the land. It is apparent the General Assembly did not intend to provide NC RICO with a broader remedial stroke than its federal counterpart.

**Am Jur 2d, Extortion, Blackmail, and Threats §§ 241-259.**

Judge JOHNSON dissenting in part and concurring in part.

Appeal by plaintiffs from order entered 15 May 1995 by Judge Thomas W. Ross in Guilford County Superior Court. Heard in the Court of Appeals 21 May 1996.

*Smith, Helms, Mulliss & Moore, L.L.P., by Alan W. Duncan and Matthew W. Sawchak, for plaintiff-appellants.*

*Womble Carlyle, Sandridge & Rice, L.L.P., by Clayton M. Custer, for defendant-appellees Pamela Ford Allison, Marianne Donadio, Rhoda Edmonds, Theresa Farley, Yvonne Ford, Harriette Gabriele, Georgia Gaines, Karin Grubbe, Albert Hodges, Diane and Julian McClamroch, Bernard and Elaine McHale, Carol Redmond, Duane and Martha Richardson, Betty Salter, Keith and Kimberly Schimmel, Annabell Simpson, and Laurel C. Treddnick.*

*Tuggle, Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for defendant-appellee Virginia D. Bell.*

*American Family Association Law Center, by Nathan W. Kellum, for defendant-appellees Scott and Leigh Ann Allred, Stephen Beall, Karen L. Beane, Elise Galan, Deborah Hebestreit, Jeffrey Alexander Kendall, Father Conrad Kimbrough, Rebecca Morrison, Candido Rosario, Betty and Ronald Steinkamp, John and Lynn Thompson, and Amber Winfield.*

*Frazier, Frazier & Mahler, by Harold C. Mahler, for defendant-appellees Libby Dunsmore, Bernard and Elaine McHale, and Annabell Simpson.*

*The American Center for Law and Justice, by Walter Weber, for defendant-appellees Linda Winfield, William H. Winfield, Jr. and Linda Winfield d/b/a the Prolife Action League of Greensboro.*

MARTIN, Mark D., Judge.

Plaintiffs appeal from the trial court's grant of partial summary judgment to defendants on plaintiffs' claim for alleged violations of the North Carolina Racketeer Influenced and Corrupt Organizations Act (NC RICO).

The plaintiffs, Dr. Kaplan, a medical doctor, and his family, reside in Greensboro, North Carolina. Defendant Prolife Action League of Greensboro (PALG) is the organizational banner under which the named individual defendants espouse their anti-abortion beliefs. It is undisputed PALG has organized several pickets outside plaintiffs' personal residence and Dr. Kaplan's place of business because of the animus defendants hold towards abortion.

On 14 January 1992 plaintiffs instituted the present action against defendants claiming public and private nuisance; intentional infliction of emotional distress; invasion of privacy; violations of NC RICO, N.C. Gen. Stat. § 75D-1, *et seq.*; violations of the Federal Racketeer Influenced and Corrupt Organizations Act (federal RICO), 18 U.S.C. § 1961, *et seq.*; and interference with civil rights. In January 1992 plaintiffs voluntarily dismissed their federal RICO claim.

By order filed 8 June 1994, the Chief Justice of the Supreme Court of North Carolina designated the present case, pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, as exceptional and assigned Superior Court Judge Thomas W. Ross to preside over all proceedings in this action.

By order signed 15 May 1995, Judge Ross granted defendants' motions for partial summary judgment on plaintiffs' NC RICO claim.

On appeal plaintiffs contend they proffered sufficient evidence of "pecuniary gain," N.C. Gen. Stat. § 75D-2(c) (1990), and injury or damage to property, N.C. Gen. Stat. § 75D-8(c) (1990), and, therefore, the trial court erred by granting partial summary judgment to defendants.

At the outset we note a partial grant of summary judgment is an interlocutory order which is generally not subject to immediate appeal. *See, e.g., Jeffreys v. Raleigh Oaks Joint Venture,* 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (*quoting Liggett Group, Inc. v. Sunas,* 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993)). In the present case, however, pursuant to the trial court's certification under N.C.R. Civ. P. 54(b), the parties are permitted to seek immediate review of the trial court's order. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990); *Jeffreys,* 115 N.C. App. at 379, 444 S.E.2d at 253.

When ruling on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *James v. Clark,* 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. review denied,* 340 N.C. 359, 458 S.E.2d 187 (1995). The moving party must "positively and clearly" show there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. *Id.* at 180, 454 S.E.2d at 828. The moving party is entitled to judgment as a matter of law if it can prove " 'that an essential element of the plaintiff's case is nonexistent . . . .' " *Id.* at 181, 454 S.E.2d at 828 (*quoting Watts v. Cumberland County Hosp. System,* 75 N.C. App. 1, 6, 330 S.E.2d 242, 247, *disc. review denied on addt'l issues,* 314 N.C. 548, 335 S.E.2d 27 (1985), *rev'd on other grounds,* 317 N.C. 321, 345 S.E.2d 201 (1986)).

In the present case, the propriety of the trial court's grant of partial summary judgment is controlled by this Court's interpretation of sections 75D-2(c) and 75D-8(c) of NC RICO. Construction of these provisions must necessarily be resolved by recourse to well settled canons of statutory interpretation.

The primary goal of statutory construction is to give effect to the intent of the legislature. *Bowers v. City of High Point,* 339 N.C. 413, 419, 451 S.E.2d 284, 289 (1994). "The will of the legislature 'must be found from the [plain] language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.' " *State v. Oliver,* 343 N.C. 202, 211, 470 S.E.2d 16, 22 (1996) (*quoting State ex rel. N.C. Milk Comm'n v.*

*National Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967)). In any event, where a statute is susceptible to two constructions, one constitutional and the other unconstitutional, the former will be adopted. *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977).

NC RICO was ratified approximately one year after the United States Supreme Court recognized the civil provisions of federal RICO were "evolving into something quite different from the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500, 87 L. Ed. 2d 346, 361 (1985). Further, prior to its ratification by the General Assembly, the scope of NC RICO's private right of action was substantially limited pursuant to hearings conducted by the Senate Judiciary IV Committee. *See* MINUTES FOR SENATE JUDICIARY IV COMMITTEE, 1st session (July 11, 1985) (hereinafter Senate Judiciary IV Minutes).

I.

**[1]** Section 75D-2(c) expressly limits the activities targeted by NC RICO. Specifically, section 75D-2(c) provides:

> It is not the intent of the General Assembly that this Chapter apply to isolated and unrelated incidents of unlawful conduct but <u>only to an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain</u>. Further, it is not the intent of the General Assembly that legitimate business organizations doing business in this State, having no connection to, or any relationship or involvement with organized unlawful elements, groups or activities be subject to suit under the provisions of this Chapter.

N.C. Gen. Stat. § 75D-2(c) (1990) (emphasis added). The plain language of the statute, coupled with the legislative intent, clearly indicates the scope of NC RICO is limited to cases where pecuniary gain is derived from organized unlawful activity prohibited under the statute. Put simply, section 75D-2(c) requires the aggrieved party to establish a causal connection between the alleged pecuniary gain and defendant's activities which allegedly violate section 75D-4.

In the present case, plaintiffs assert defendants engaged in the following racketeering or unlawful organized activity: extortion; conspiracy to extort; attempted extortion; communication of threats; and transmittal of threatening writings. Plaintiffs further contend that, taken together, defendants alleged acts represent a pattern of racketeering activity prohibited under section 75D-4.

We assume, without deciding, that plaintiffs have offered sufficient evidence of a pattern of racketeering activity prohibited under section 75D-4. Nevertheless, to withstand summary judgment, plaintiffs' forecast of evidence must also demonstrate a causal nexus between PALG's alleged pecuniary gain and defendants' organized unlawful activity under section 75D-4.

To establish pecuniary gain, plaintiffs direct this Court to three checks from defendant Virginia Bell (Bell checks) and PALG newsletters which solicit contributions. It is beyond question the Bell checks clearly evidence the receipt of money by PALG. In fact, defendants admit PALG is "getting money to operate the organization." The present record is nonetheless devoid of any indication PALG derived this monetary gain from, or as a result of, activities prohibited by section 75D-4. On the other hand, the newsletters, unlike the Bell checks, do not, in and of themselves, establish pecuniary gain. Further, even assuming the solicitations resulted in donations, plaintiffs failed to allege, much less proffer, evidence that the donations were in any way derived as a result of organized unlawful activity prohibited by section 75D-4.

Indeed, the newsletters do not recount any illegal activity by PALG. Rather, the only PALG sponsored events referenced in the newsletters are pickets, yard sales, covered dish suppers, meetings, and the like. Admittedly, PALG's picketing and demonstrating were intended to dissuade Dr. Kaplan from performing abortions, a lawful activity. We note, however, that all pickets, organized demonstrations, or boycotts, regardless of their substantive objective, are inherently coercive. Such activity ordinarily falls under the protective umbrella of the First Amendment to the United States Constitution. *Texas v. Johnson*, 491 U.S. 397, 404, 105 L. Ed. 2d 342, 353 (1989) (picketing "possesses sufficient communicative elements to bring the First Amendment into play").

Wholly apart from any constitutional considerations, however, plaintiffs have nonetheless failed to establish, as a matter of law, a *causal nexus between PALG's pecuniary gain and defendants' alleged organized unlawful activity under section 75D-4.*[1]

---

1. The dissent implies we limit pecuniary gain to money extracted directly from plaintiffs. To the contrary, we superimpose no such requirement on section 75D-2(c). Rather, we merely apply the clear statutory mandate that the alleged pecuniary gain, no matter what the source of the funds, must be derived from the alleged unlawful activity.

## II.

**[2]** Alternatively, assuming plaintiffs proffered sufficient evidence of the requisite "pecuniary gain," Judge Ross' grant of partial summary judgment must also be affirmed on the entirely independent ground that plaintiffs failed to demonstrate any injury or damage to property cognizable under NC RICO.

Section 75D-8(c) provides, in pertinent part, "Any innocent person <u>who is injured or damaged in his business or property</u> by reason of any violation of G.S. 75D-4 involving a pattern of racketeering activity shall have a cause of action for three times the actual damages sustained and reasonable attorneys fees." N.C. Gen. Stat. § 75D-8(c) (1990) (emphasis added).

In the instant action, plaintiffs limit their NC RICO claim solely to alleged injury or damage to property. Specifically, plaintiffs "do not seek damages for the diminution in value of their house. Instead, the property damages referred to [in their NC RICO claim] relate to [plaintiffs'] loss of the *use and enjoyment of their home,* as a result of the defendants' appearance targeted at [plaintiffs'] home." The dispositive issue in this appeal therefore is whether "property," as used in NC RICO, includes loss of use and enjoyment of plaintiffs' personal residence.

We recognize that, generally speaking, the term property may include "not only the thing possessed but also . . . the right of the owner to the land; the right to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from its use."[2] *Hildebrand v. Telegraph Co.,* 219 N.C. 402, 408, 14 S.E.2d 252, 256 (1941). *See also Long v. City of Charlotte,* 306 N.C. 187, 201, 293 S.E.2d 101, 110-111 (1982) ("where a person's right to [] use [or] enjoy . . . his land is substantially impaired, his property has been taken"). Nevertheless, our research has not revealed any jurisdiction which adopts such an expansive definition of "property" under its respective RICO statute.

---

2. N.C. Gen. Stat. § 75D-3(h) defines "real property" as "any real property situated in [North Carolina] or any interest in such real property, including . . . any lease of or mortgage upon such real property." *Id.* Plaintiffs argue section 75D-3(h) implies that "property," under section 75D-8(c), should be broadly construed. Even granting this assumption, the issue nevertheless remains whether the term "property" should be stretched to encompass the intangible property interest a claimant has in the use and enjoyment of its land.

**KAPLAN v. PROLIFE ACTION LEAGUE OF GREENSBORO**

[123 N.C. App. 720 (1996)]

In fact, the only federal circuit court to squarely address the present issue has determined the loss of the use and enjoyment of one's personal residence does not constitute an injury to property recoverable under federal civil RICO. *Oscar v. University Students Co-Op. Ass'n*, 965 F.2d 783, 787-788 (9th Cir.), *cert. denied*, 506 U.S. 1020, 121 L. Ed. 2d 581 (1992). In *Oscar*, plaintiffs rented apartments near Barrington Hall, a student co-operative run by defendants. *Id.* at 784. Plaintiffs alleged that Barrington Hall was being used as a drug house and the attendant filth, noise, violence, and vandalism deprived them of the use and enjoyment of their rental property. *Id.* at 785. The district court dismissed plaintiffs' RICO claim. *Id.*

In affirming the dismissal, the Ninth Circuit stated:

While [federal] RICO is to be "liberally construed," it is well established that not all injuries are compensable under this section. Two limitations are significant in this case. First, a showing of "injury" requires proof of concrete financial loss, and not mere "injury to a valuable intangible property interest."

. . . .

Second, it is clear that personal injuries are not compensable under [federal] RICO.

*Id.* (citations omitted). Characterizing plaintiffs' claim for loss of the use and enjoyment of their leasehold as a claim for "personal discomfort and annoyance," the Court concluded such a claim was "not a tangible injury to property . . . [because] the *market* value of [plaintiffs'] leasehold interest[s] has not declined." *Id.* at 787.

While our research indicates no other federal circuit court of appeals has addressed whether loss of use and enjoyment is an injury to property under federal RICO, several circuits have considered analogous situations and likewise declined to expand the definition of "property" under federal RICO. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918-919 (3d Cir. 1991) (medical expenses and emotional distress from exposure to toxic waste not recoverable, but diminution in market value of land recoverable); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (loss of security and peace of mind due to cancellation of insurance policy not actionable); *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1179-1180 (7th Cir. 1989) (no cognizable RICO claim where harassment and intimidation directed against certain litigants in an effort to have them settle lawsuit). Indeed, the parties have not cited, and we are unaware of, any

federal circuit which has extended federal RICO to embrace injury to an intangible property interest that in no way diminishes the market value of the property.

Plaintiffs nevertheless argue this Court should adopt the rationale propounded in the *Oscar* dissent. According to the *Oscar* dissent, "[w]e are seven centuries too late to characterize [a] nuisance [which causes loss of use and enjoyment of property] as injury to person rather than to property." *Oscar*, 965 F.2d at 793 (Kleinfeld, J., dissenting). We note, however, that unlike the present case, the *Oscar* plaintiffs alleged a nuisance which was inextricably related to their property and, in fact, the *Oscar* plaintiffs were "harmed only because of their connection to the land." *Id.* at 793.

Indeed, the *Oscar* dissent, itself, emphasized the alleged nuisance in that case would unavoidably be imposed on any future occupant of the property. *Id.* at 794. As the dissent stated:

> [plaintiffs] do not suggest that the narcotics dealers bore them any special animus, just that the drug dealing adversely affected the nearby apartments in which they had the misfortune to live. The harm would be imposed on anyone who had the connection to the real estate that [plaintiffs] did, and it would not have been imposed on [plaintiffs] but for their connection to the land.

*Id.* (emphasis added). Therefore, according to the reasoning of the *Oscar* dissent, a nuisance which is inextricably related to property represents an injury to property, albeit the intangible property interest in the use and enjoyment of one's personal residence, under federal RICO. *See id.* at 793-794. *See also Long*, 306 N.C. at 201, 293 S.E.2d at 110 ("where a person's right to [] use [or] enjoy . . . his land is substantially impaired, his property has been taken); *Hildebrand*, 219 N.C. at 408, 14 S.E.2d at 256 ("property" includes the right to use and enjoy it).

It follows that plaintiffs' NC RICO claim is fatally flawed under the reasoning of either the majority or dissent in *Oscar*. First, under the *Oscar* holding, loss of use and enjoyment of property does not constitute an injury to property under federal RICO. Second, even adopting the rationale of the *Oscar* dissent, plaintiffs' claim in the present case fails because the alleged harm suffered by plaintiffs would not be imposed on anyone else who occupied the property as it does not arise from plaintiffs' connection to the land. *Cf. Oscar*, 965 F.2d at 793-794. Rather, plaintiffs' claim arises solely from alleged

PALG activities which specifically targeted plaintiffs, especially Dr. Kaplan, as individuals.

Because plaintiffs' claim would fail under the analogous federal RICO provision,[3] and it is apparent the General Assembly did not intend to provide NC RICO with a broader remedial stroke than its federal counterpart, *see* Senate Judiciary IV Minutes, *supra*, we affirm the trial court's grant of partial summary judgment in favor of defendants.

In sum, plaintiffs failed to proffer sufficient evidence under either section 75D-2(c) or section 75D-8(c) to withstand defendants' motion for partial summary judgment. Accordingly, without prejudice to plaintiffs' right to seek redress under any one of their remaining claims, we affirm Judge Ross' grant of partial summary judgment.

Affirmed.

Judge LEWIS concurs.

Judge JOHNSON dissents in part and concurs in part.

Judge JOHNSON dissenting in part, and concurring in part.

The majority would impermissibly limit the reach of the North Carolina RICO Act in derogation of the statute's mandate and the General Assembly's intent. I respectfully dissent as to that part of the majority opinion which finds that summary judgment was properly granted for defendants Linda Winfield and the Prolife Action League of Greensboro, but concur as to the majority's decision that summary judgment was properly granted for all of the other listed defendants.

I find that not only do the activites allegedly engaged in by defendants fall within the prohibited behaviors espoused in the North Carolina RICO Act, but also that there is a sufficient causal nexus between the pecuniary gain of certain defendants and those activities in which they have engaged. Black's Law Dictionary defines "pecuniary" as "Monetary; relating to money; financial; consisting of money or that which can be valued as money." BLACK'S LAW DICTIONARY 1131

---

3. Federal RICO, 18 U.S.C. § 1964(c) provides recovery to any person "injured in his business or property . . ." whereas section 75D-8(c) provides recovery to "[a]ny innocent person who is injured or damaged in his business or property . . . ." We perceive no legally significant distinction between the language of these provisions.

(6th ed. 1990). Further, the term "pecuniary benefits" is defined by Black's as "Benefits that can be valued in money." "Pecuniary benefits available to parents by reason of death of an adult child encompass those benefits, including money, that can be reasonably estimated in money, such as labor, services, kindness and attention of child to parents." *Id.* (citations omitted).

The facts herein militate that this Court find that while defendants' actions may not be taken for pecuniary purpose, they certainly have a pecuniary effect. Plaintiffs presented evidence which tended to show that defendants passed out leaflets to defendant League members, as well as non-members while picketing outside of plaintiffs' residence, in an effort to elicit support and increase membership of defendant League. Such distribution has led to income in furtherance of the League's effort to force Dr. Kaplan to stop performing abortions. In addition, defendants' picketing Dr. Kaplan's business and home increases the League's visibility, and leads to increased donations, i.e., pecuniary gain, for its cause. Plaintiffs also point to the League's newsletters soliciting (and consequently, receiving) money to fund its campaign against plaintiffs and other physicians' families, yard sales, collections for anti-abortion billboards, etc., which also lead to pecuniary gain.

In fact, defendants admit that defendant League is "getting money to operate the organization," but argue that pecuniary gain requires something more, such as evidence that the League's income exceeded its expenses. In addition, defendants argue that the League's income, to qualify as a pecuniary gain, has to be extracted directly from the Kaplans. I find this position to be untenable.

The statute only requires that the activity have the purpose or effect of pecuniary gain, and does not designate that the gain be had from plaintiffs or by defendants directly. Notably, plaintiffs have sought to discover various membership listings and financial records in order to further demonstrate the pecuniary effect of defendants' actions in the instant case. This issue is also the subject of an opinion recently filed by this Court. *Kaplan, et al. v. Prolife Action League of Greensboro, et al.*, COA 95-1095 (N.C. Ct. App. Sept. 3, 1996). I find, without these listings and records which plaintiffs seek to discover, that there is still an adequate nexus between the actions of defendant Linda Winfield, who publishes and dispenses defendant League's newsletter, and the League itself, and their consequent pecuniary gain to fulfill the requirements of the North Carolina RICO Act. As to the

other listed defendants, who appear to be mere contributors and/or members of defendant League, I agree with the majority that the evidence is insufficient to show that these persons *individually* derived any "pecuniary gain" from the actions detailed above.

Finally, I am also of the opinion that plaintiffs tendered sufficient evidence of injury or damage to property within the meaning of section 75D-8(c) of the North Carolina RICO Act to withstand defendants Linda Winfield and the League's motion for summary judgment. Section 75D-8(c) of our RICO Act provides for recovery of treble damages by any person "injured or damaged in his business or property" by any violation of section 75D-4 of the Act. N.C.G.S. § 75D-8(c). In the instant action, plaintiffs seek compensation solely for the "loss of use and enjoyment of their home," and not "for the diminution in the value" of their home.

While there is not any case law specifically addressing the necessary injury to "business or property" under section 75D-8(c), there is a formidable body of North Carolina case law, which discusses the "bundle of rights" that goes along with the ownership of real property. In *Hildebrand v. Telegraph Co.*, 219 N.C. 402, 14 S.E.2d 252 (1941), our Supreme Court stated:

> The word "property" extends to every aspect of right and interest capable of being enjoyed as such upon which it is practicable to place a money value. The term comprehends not only the thing possessed but also, in strict legal parlance, means the right of the owner to the land; *the right to possess, use, enjoy* and dispose of it, and the corresponding right to exclude others from its use.

*Id.* at 408, 14 S.E.2d at 256 (emphasis added). Accordingly, "where a person's right to possess, use, enjoy or dispose of his land is substantially impaired, his property has been taken." *Long v. City of Charlotte*, 306 N.C. 187, 201, 293 S.E.2d 101, 110-11 (1982). In addition, plaintiffs cite section 75D-3(h) of the North Carolina RICO Act to support their argument that the legislature intended that the term "property" be construed broadly. *See* N.C. Gen. Stat. § 75D-3(h) (stating that "[r]eal property" includes "*any* interest in such real property," including leases and mortgages) (emphasis added).

The majority references *Oscar v. University Students Co-Op. Ass'n*, 965 F.2d 783 (9th Cir.), *cert. denied*, 506 U.S. 1020, 121 L. Ed. 2d 581 (1992), and string cites several other circuit courts'

decisions interpreting the reach of federal civil RICO, in support of a narrower interpretation of the term "property" under the North Carolina RICO Act. It is true as the majority notes that at the time that this statute was ratified, of particular concern to the General Assembly was organized crime and its social ills. Since that time, however, other patterns of organized criminal activity—i.e., securities, mail and wire fraud, and anti-abortion activities—have escalated. We, as members of the judiciary who are often called upon to interpret our statutes to comport with our legislators' intent, must be ever conscious and mindful of the care and deliberation taken by the General Assembly in fashioning the laws of North Carolina. In the case of the North Carolina RICO Act, the General Assembly, in drafting this particular statute, drew the statute in a broad manner to encompass plaintiffs' action herein.

I find nothing in the legislative history of our RICO Act to support the majority's strict construction of our civil RICO statute; and, therefore, refuse to place the "narrow and novel" strictures of the circuit courts upon the North Carolina RICO Act. This Court should instead find that the plain meaning of the Act and the body of North Carolina case law, which recognizes the right to possess, use, enjoy, and dispose of property as being a property interest, supports a broad reading of the term "property" and injury thereto.

As such, we should decline to follow the circuit courts' decisions noted in the body of the majority opinion, interpreting the federal civil RICO Act. Accordingly, we should find that plaintiffs presented sufficient evidence that they had suffered an injury to "business or property" within the meaning of section 75D-8(c) of the North Carolina civil RICO Act to withstand defendants' motion for summary judgment in regards to their North Carolina RICO claim.

Plaintiffs' forecast of evidence does in fact show defendants Linda Winfield and the League's actions had the effect of deriving "pecuniary gain" pursuant to section 75D-2(c) of the Act; and adequate injury to "business or property" under section 75D-8(c) of that same Act. As such, I dissent in part, and concur in part with the majority's decision.