JEFFREY B. GRAM, Plaintiff-Appellee v. WILLIAM R. DAVIS, COOPER & DAVIS, a North Carolina Partnership, and A. JAY BLAKE, Defendant-Appellants

No. COA97-205

(Filed 3 February 1998)

### 1. Attorneys at Law § 46 (NCI4th)— attorney malpractice— failure to inform about restrictive covenant—proximate cause

The evidence in a legal malpractice action was sufficient for the jury to find that negligence by defendant attorneys in failing to inform plaintiff purchaser of a lakefront tract and an adjoining lot that a restrictive covenant prevented the lot from being used for access to the lakefront property was a proximate cause of damages resulting from plaintiffs' inability to sell lots in the lakefront tract until the covenant was modified to allow such access, rather than a grading company's lien on the lakefront tract, since the lien was not an insurmountable obstacle to sale of the lots because plaintiff could have paid the lien or could have obtained a bond to remove the lien's encumbrance on the property in order to sell the lots.

### 2. Attorneys at Law § 49 (NCI4th)— legal malpractice—damages—attorney fees in removing restriction

The plaintiff in a legal malpractice action was properly permitted to introduce on the issue of damages evidence of attorney fees he incurred to remove a restriction on land about which defendant attorneys failed to inform him. Even if it was error to admit this evidence, defendants were not prejudiced where the trial court explicitly instructed the jury that damages should not include attorney fees incurred in prosecuting this case.

### 3. Trial § 475 (NCI4th)— quotient verdict—no evidence of a prior agreement

Evidence that the jury verdict was one-half of the amount sought by plaintiff was insufficient to show that the jury had reached a quotient verdict so as to warrant a new trial where there was no evidence tending to show that the jurors had reached a prior agreement to be bound by the average of the amount each submitted as damages.

Appeal by defendants from judgment entered 15 August 1996 and order entered 29 August 1996 by Judge E. Lynn Johnson in

**GRAM v. DAVIS**

[128 N.C. App. 484 (1998)]

Cumberland County Superior Court. Heard in the Court of Appeals 23 October 1997.

*Broughton, Wilkins, Webb & Sugg, P.A., by William Woodward Webb, R. Palmer Sugg, and Benjamin E. Thompson, III, for plaintiff-appellee.*

*Anderson, Johnson, Lawrence, Butler & Bock, by Lee B. Johnson, for defendant-appellants.*

McGEE, Judge.

This appeal arises from a malpractice action filed against defendant counsel and defendant law firm (collectively defendants) on 5 March 1993 by plaintiff for damages he alleged he incurred as a result of defendants' negligent failure to inform him that a restrictive covenant burdening real property he intended to purchase prohibited the use of the land to access another subdivision.

Plaintiff's evidence at trial tended to show that in January 1990 plaintiff made an offer to purchase approximately twenty-two acres of land on Hope Mills Lake in Hope Mills, North Carolina (Hope Mills tract), and a lot in the adjoining subdivision of Clifton Forge (Lot 7). As the Hope Mills tract was accessible by land only across Lot 7, plaintiff bought Lot 7 in order to build a road upon it to access the Hope Mills tract and to develop the tract into a subdivision called The Cove. After the legal services of defendants were retained by plaintiff to perform the closing on the property, defendants completed a title search and discovered that several restrictive covenants applied to Lot 7, one of which restricted the use of the property to residential use only. Plaintiff argued defendants negligently advised him that the restriction would not prevent him from building a road across Lot 7 to provide access to the Hope Mills tract, when in fact the restrictive covenant did prohibit the use of Lot 7 to access another subdivision.

Plaintiff's evidence was that between the time of closing of the property in the spring of 1990 and May 1991 plaintiff made improvements on both properties including installing water and sewer systems and constructing roads, including the road across Lot 7. In May 1991 plaintiff learned that Lot 7 could not be used to access The Cove. Plaintiff then attempted unsuccessfully to purchase another tract of adjacent property to obtain this access. Plaintiff testified that despite receiving numerous inquiries by potential buyers, he did not sell any lots in The Cove. On 20 May 1991 Autry Grading Company

recorded a lien in the amount of approximately $76,000.00 on plaintiff's property for services performed by the grading company. In their answer, defendants alleged several affirmative defenses and at trial they argued that the lien on the land effectively prevented sale by plaintiff of any lot in The Cove and any damage incurred by plaintiff did not occur until after the lien was canceled. They alleged defendants' negligence was not the proximate cause of plaintiff's injuries.

In June 1992 a modification of the restrictive covenant on Lot 7 was recorded allowing access to the Hope Mills tract via Lot 7. This modification was obtained by defendants through negotiation with surrounding landowners. The lien encumbering the property was removed in July 1992.

At trial, plaintiff did not dispute the existence of the lien, but argued instead that it did not create an insurmountable barrier to the sale of the lots. An expert witness in real estate law testified that plaintiff may have been able to have the property released from the lien by securing a bond to which the lien would then attach. Plaintiff was also free to pay the full amount of the lien to release the property. One reason plaintiff cited for not paying the grading invoices was that he had been overcharged for the grading company's services and was disputing the amount owed. However, plaintiff stated that he would have paid the final invoice in full if it was the only obstacle preventing him from selling the property.

Plaintiff's appraiser initially testified at trial that plaintiff incurred damages in the amount of $327,000.00. This estimate was based on the approximate twenty months' delay in obtaining marketable title which prevented plaintiff from selling lots from 1 May 1991, the date of the discovery of the access problem, and the date in January 1993 when he obtained title insurance on the land. The trial court, however, limited the amount of damages to those sustained between 1 May 1991, the date the restrictive covenant was discovered, and 2 June 1992, the date the modification of the restrictive covenant was filed. The trial court then allowed the appraiser to recalculate the amount of estimated damages and to testify that the amount of damages sustained by plaintiff was $266,948.00.

Plaintiff also testified on cross-examination about the amount of damages he incurred:

**GRAM v. DAVIS**

[128 N.C. App. 484 (1998)]

Q. That sixty thousand—more than sixty thousand dollars . . . that you've spent, in addition to the three hundred and twenty-seven thousand that you claim you lost, was spent on what?

A. . . . the majority of it was spent—certainly the largest amount of it, was spent in the beginning with Tim Barber who was my lawyer for—from about November or December 1991 until 1993 sometime. And he was the one that was working with [defendants] trying to get the problem resolved.

. . .

Q. So, what you're saying is that you spent sixty thousand dollars in attorneys' fees in prosecuting your claim?

A. No, I said that I spent more than sixty thousand dollars, and the majority of it was in attorneys' fees, to solve—to date, to solve the problem. Obviously, I'm spending attorneys' fees now. I can't even recover those . . . all I want to do is be made whole, and I spent money in the beginning trying to do that.

. . .

Q. —having not purchased any lots or easements, what specifically did you spend more than sixty thousand dollars on?

A. I spent money on appraisers. And that is, as far as I'm concerned at this point, in direct connection with this . . . lawsuit.

Q. Prosecution of this claim?

A. Correct. . . . And I also spent money with my surveyors in the beginning. Just keeping people going out there that normally would not have had to go out there because there would be activity and the lots would have been selling. . . .

But the majority of it . . . is on attorneys' fees to fix the problem and also I'm spending money on attorneys' fees to get where we are today.

Defendants moved for a directed verdict at the close of plaintiff's case on the basis that the lien, rather than the restrictive covenant, prevented plaintiff from selling lots in The Cove; and thus, defendants' negligence was not the proximate cause of plaintiff's damages. The motion was denied. At the close of all the evidence, the trial court directed a verdict for plaintiff on the issue of defendants' negligence. Thus, the only issues submitted to the jury were whether defendants' negligence was a proximate cause of plaintiff's damages

and the calculation of the amount of damages plaintiff was entitled to recover. On the latter issue, the trial court instructed the jury that:

> Evidence has been received that plaintiff suffered certain expenses in connection with his efforts dealing with the access problem to his subdivision. Damages include such reasonable expenses as you find from the evidence aris[ing] naturally and proximately from the access problem to his subdivision and are reasonably definite and certain, excluding any costs or attorneys' fees in the prosecution of this action.

The jury determined that defendants' negligence was the proximate cause of plaintiff's damages and awarded plaintiff $164,000.00. Defendants moved for a new trial, which was denied in an order entered 29 August 1996.

The issues presented are: (1) whether there was sufficient evidence to sustain a finding that the negligence of defendants was the proximate cause of plaintiff's injuries, (2) whether the attorneys' fees paid to third parties to remedy the effects of an attorney's malpractice are recoverable as damages in a legal malpractice action, and (3) whether the trial court erred in denying defendants' motion for a new trial on the grounds that the jury returned a quotient verdict determined by averaging each juror's award.

## I. Proximate Cause

[1] Defendants contend that their negligence was not the proximate cause of plaintiff's injuries because plaintiff was prevented from selling lots while the lien existed against the property. Defendants argue that their directed verdict on this issue was erroneously denied. We disagree. The standard for reviewing a denial of a directed verdict motion requires that "all of the evidence which tends to support the [non-moving party's] claim must be taken as true and considered in the light most favorable to him, giving him the benefit of every reasonable inference which may be legitimately drawn therefrom." *Murphy v. Edwards and Warren*, 36 N.C. App. 653, 659, 245 S.E.2d 212, 216-17, *disc. review denied*, 295 N.C. 551, 248 S.E.2d 728 (1978).

Plaintiff testified at trial that he would have paid the full amount of the lien in order to sell the lots, even though he was contesting the amount of the lien on grounds that the grading company had not performed all of the services claimed. The possibility of obtaining a bond to remove the lien's encumbrance on the property also existed. Viewing these facts in the light most favorable to plaintiff, we hold

that the lien was not an insurmountable obstacle to prevent plaintiff from selling the property; thus, it was not the proximate cause of plaintiff's damages. We reject defendants' first argument.

## II. Attorneys' Fees as Damages

[2] Defendants next argue that the trial court erred by failing to exclude plaintiff's testimony regarding the attorneys' fees he incurred as a result of defendants' negligence. We disagree. Although the general rule in North Carolina is that attorneys' fees and other costs associated with litigation are not recoverable in a legal malpractice action absent statutory liability, *Martin v. Hartford Accident and Indemnity Co.*, 68 N.C. App. 534, 536, 316 S.E.2d 126, 127, *disc. review denied*, 311 N.C. 760, 321 S.E.2d 140 (1984), this rule does not apply to bar recovery for costs, including attorneys' fees, incurred by a plaintiff to remedy the injury caused by the malpractice. *See Greene v. Carpenter, Wilson, Cannon and Blair*, 119 N.C. App. 415, 418, 458 S.E.2d 507, 509 (1995) ("proper measure of damages in a legal malpractice action is the difference between the plaintiff's actual pecuniary position and what plaintiff's pecuniary position should have been if the attorney's malpractice had not occurred"). Thus, when the plaintiff "retains title to the property, the damages may be the amount required to free the land from [the] encumbrance." 7A C.J.S. *Attorney & Client* § 273 (1980).

The policy supporting this rule is that rather than attempting to recover the attorneys' fees he expended in litigating the malpractice action, the plaintiff is merely attempting to place himself in the same position as he would have been *but for* the negligence of the defendants. *See Sorenson v. Fio Rito*, 413 N.E.2d 47, 51-52 (Ill. App. Ct. 1980) (allowing recovery for attorneys' fees spent to mitigate damages incurred as result of attorney malpractice). In this case, the recovery of attorneys' fees spent attempting to remove the lien from the property is consistent with plaintiff's duty to mitigate damages and is necessary to place the plaintiff in the position he would have been but for the defendants' negligence.

Moreover, assuming *arguendo* that it was error to admit plaintiff's testimony in regard to attorneys' fees, defendants have failed to show prejudice because the trial court explicitly instructed the jury that damages should include such "reasonable expenses" which "arise naturally and proximately from the access problem" to the subdivision and "are reasonably definite and certain, excluding any costs or attorney's fees in the prosecution of this action." Thus the jury was

explicitly instructed not to include the attorneys' fees incurred by plaintiff in prosecuting this case. We hold that this instruction cured any error made by the trial court in admitting plaintiff's testimony.

### III. Quotient Verdict

[3] "It is the well-established law of North Carolina that no quotient verdict exists unless the jurors reach *a prior agreement* to be bound by the average of the amount each submits as damages." *Seaman v. McQueen*, 51 N.C. App. 500, 506, 277 S.E.2d 118, 121 (1981). "While the amount of the verdict may prompt the surmise that it was a quotient verdict, it alone is insufficient to compel the conclusion, as a matter of law, that it was in fact a quotient verdict." *Collins v. Highway Com.*, 240 N.C. 627, 628, 83 S.E.2d 552, 552 (1954).

In this case, the only evidence presented that the jury reached a quotient verdict is that the amount of damages awarded was approximately one-half of the amount sought by plaintiff. There was no evidence tending to show that the jurors had made a *"prior agreement* to be bound by the average of the amount each submit[ted] as damages," which is required under North Carolina law. *Seaman*, 51 N.C. App. at 506, 277 S.E.2d at 121. Accordingly, we hold that the trial court did not err in denying defendants a new trial.

No error.

Judges LEWIS and MARTIN, John C., concur.