LOGAN B. GILMORE AND BLAKE C. GILMORE, PLAINTIFFS
v.
SHERRIE LYNN HICKS GILMORE, DEANA CARLYLE, AND
MILTON SINGLETARY, DEFENDANTS

No. COA12-1426

Filed 3 September 2013

1. **Civil Procedure—Rule `12(b)(6)—judicial notice—outside the pleadings**

    The Court of Appeals did not take judicial notice of facts outside the complaint in an appeal from a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6).

2. **Appeal and Error—request for judicial notice—no gross violation of Appellate Rules**

    Defendant's motion for dismissal of an appeal or for sanctions against plaintiffs for requesting judicial notice of certain facts was

GILMORE v. GILMORE

[229 N.C. App. 347 (2013)]

denied. Although the Court of Appeals agreed that the request for judicial notice should be denied, plaintiffs' conduct did not grossly violate the Appellate Rules.

**3. Perjury—no basis for a civil claim**

Plaintiffs' claims for fraud and conspiracy to commit fraud were properly dismissed pursuant to Rule 12(b)(6) where the essence of plaintiffs' amended complaint was that defendants committed fraud and conspiracy when they prepared false affidavits and testified falsely in attempting to submit a false will for probate. A civil action for damages may not be maintained against a witness who testified falsely.

**4. Obstruction of Justice—civil claim—not supported by perjury**

The trial court correctly dismissed pursuant to N.C.G.S. § 1A-1 Rule 12(b)(6) plaintiffs' claim for obstruction of justice arising from an allegedly fraudulent will submitted to probate. The crux of the claim was defendants' alleged commission of perjury, which will not support a civil suit.

**5. Racketeer Influenced and Corrupt Organizations—failure to state a claim—injury to business or property—pecuniary gain**

Plaintiffs failed to plead a valid North Carolina RICO claim for purposes of N.C.G.S. § 1A1, Rule 12(b)(6) where plaintiffs' amended complaint failed to sufficiently allege both the injury and pecuniary gain elements.

Appeal by plaintiffs from order entered 13 August 2012 by Judge Clarence E. Horton, Jr. in Cabarrus County Superior Court. Heard in the Court of Appeals 26 March 2013.

*Robinson, Bradshaw & Hinson, P.A., by Thomas P. Holderness, for plaintiffs-appellants.*

*Hausler Law Firm, PLLC, by Kurt F. Hausler, for defendant-appellee Milton Singletary.*

DAVIS, Judge.

Logan B. Gilmore and Blake C. Gilmore (collectively "plaintiffs") appeal from the trial court's order dismissing their amended complaint against defendants Sherrie Lynn Hicks Gilmore ("Mrs. Gilmore"), Deana Carlyle ("Carlyle"), and Milton Singletary ("Singletary") (collectively

"defendants") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. After careful review, we affirm the trial court's order.

## Factual Background

We have summarized the pertinent facts below using plaintiffs' own statements from their amended complaint, which we treat as true in reviewing the trial court's order dismissing the complaint under Rule 12(b)(6). *See, e.g., Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) ("When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.").

Between 29 November 2011 and 12 December 2011, defendants conspired to create a fraudulent will for Mrs. Gilmore's husband, Jackie Dean Gilmore ("Mr. Gilmore"). Carlyle and Singletary signed the fraudulent will as witnesses despite knowing that Mr. Gilmore (1) did not sign the document; (2) did not ask them to sign the document; and (3) did not indicate that he intended the document to be his will. After Mr. Gilmore's death on 4 December 2011, Mrs. Gilmore submitted the fraudulent will for probate on or about 13 December 2011. In the application for probate, Mrs. Gilmore "knowingly falsely stated" that the document was the last will and testament of Mr. Gilmore and submitted an "Oath/Affirmation" swearing, under penalty of perjury, that she believed the document to be the last will and testament of Mr. Gilmore.

Carlyle and Singletary each signed an "Affidavit of Subscribing Witnesses for Probate of Will" dated 12 December 2011, where they falsely stated, under penalty of perjury, that "[t]he decedent, in my presence, signed the paper-writing, or acknowledged his/her signature thereto and at such time declared the paper-writing to be the decedent's instrument." Mrs. Gilmore then submitted these affidavits to the clerk of court in conjunction with the application for probate. Based on this application, the clerk of court probated the fraudulent will, and plaintiffs subsequently moved to revoke probate.

At the February 2012 hearing on plaintiffs' motion to revoke probate of the false will, Carlyle and Singletary falsely testified that Mr. Gilmore (1) told them that the document was, in fact, his will; and (2) asked them to sign it as witnesses. Mrs. Gilmore gave fraudulent testimony at this hearing that Mr. Gilmore had showed her the document in May 2010 and that she later found the executed copy of the document in a box in his closet.

On 15 June 2012, plaintiffs filed an amended complaint asserting claims for (1) fraud; (2) conspiracy to commit fraud; (3) a pattern

of racketeering activity in violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act ("N.C. RICO"); and (4) obstruction of justice.

On 28 June 2012, defendants filed a motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The trial court heard defendants' motion to dismiss on 6 August 2012 and granted the motion in an order entered on 13 August 2012, determining that:

> [H]aving carefully considered the precedents, including particularly the line of cases beginning with *Godette v. Gaskill,* 151 N.C. 52 (1909), [the trial court] has concluded that while subornation of perjury and perjury are indictable criminal offenses, they do not give rise to a civil cause of action in North Carolina, so that plaintiffs' amended complaint fails to state a claim for fraud, conspiracy to commit fraud, obstruction of justice, a violation of the North Carolina RICO statutes, and punitive damages . . . .

Plaintiffs appealed to this Court.

## Analysis

### I. Standard of Review

In their sole argument on appeal, plaintiffs contend that the trial court erred in granting defendants' motion to dismiss under Rule 12(b)(6). "The standard of review of an order granting a [Rule] 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." *Burgin v. Owen,* 181 N.C. App. 511, 512, 640 S.E.2d 427, 428, *appeal dismissed and disc. review denied,* 361 N.C. 425, 647 S.E.2d 98, *cert. denied,* 361 N.C. 690, 652 S.E.2d 257 (2007). On appeal, we review the pleadings *de novo* "to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Page v. Lexington Ins. Co.,* 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation and quotation marks omitted).

### II. Judicial Notice

**[1]** Plaintiffs ask this Court to take judicial notice of the following facts: (1) Singletary was subsequently charged with felony conspiracy and perjury; (2) Mrs. Gilmore was subsequently charged with forgery of a will, uttering forged endorsements, felony conspiracy, and perjury; and (3) on

GILMORE v. GILMORE

[229 N.C. App. 347 (2013)]

21 December 2012, the trial court revoked the probate of the purported will. As "[t]he only purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleading against which it is directed[,]" we decline to take judicial notice of materials outside of the plaintiffs' amended complaint. *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 707 (2007) (citation and quotation marks omitted) ("As a general proposition . . . matters outside the complaint are not germane to a Rule 12(b)(6) motion."). Accordingly, we deny plaintiffs' request.[1]

## III. Claims for Fraud and Conspiracy to Commit Fraud

**[3]** It is well established in North Carolina that neither perjury nor subornation of perjury may form the basis for a civil action. *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 74 (2008).

> [N]o action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury, whether committed in the course of, or in connection with, a civil action or suit, criminal prosecution or other proceeding, and whether the perjurer was a party to, or a witness in, the action or proceeding.

*Brewer v. Carolina Coach Co.*, 253 N.C. 257, 262, 116 S.E.2d 725, 728 (1960) (citation and quotation marks omitted).

This principle was first set out over a century ago by our Supreme Court in *Godette v. Gaskill*, 151 N.C. 52, 65 S.E. 612 (1909). In *Godette*, the Supreme Court determined that a civil action for damages against a witness who testified falsely could not be maintained because such an action "did not lie at common law, and we have no statute authorizing it." *Id.* at 52, 65 S.E. at 613. The Court further reasoned that allowing such actions would jeopardize the finality of judgments and provide "a great leverage to litigants to intimidate witnesses." *Id.*

---

1. **[2]** Singletary filed a motion with this Court seeking dismissal of the appeal or, in the alternative, sanctions against plaintiffs for requesting judicial notice of the above-referenced facts. He contends that requesting judicial notice of these facts after plaintiffs' motion to supplement the record was denied constitutes a violation of the North Carolina Rules of Appellate Procedure. Although we agree that the request for judicial notice should be denied, we do not believe that plaintiffs' conduct "grossly violated" the Appellate Rules. *See Dogwood Dev. & Mgmt. Co. v. White Oak Transp.*, 362 N.C. 191, 199, 657 S.E.2d 361, 366 (2008) ("[T]he appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.'"). Accordingly, we deny defendant's motion for dismissal of the appeal and sanctions.

On numerous occasions, both this Court and our Supreme Court have applied the principles set out in *Godette*. In *Brewer*, the plaintiff brought an action seeking to compel the defendant to reinstate him to his former employment and to award him damages for the wages he lost after his employment was wrongfully terminated. *Brewer*, 253 N.C. at 258, 116 S.E.2d at 725-26. His complaint alleged that he was improperly dismissed from his position as a bus driver after a collision based on the defendant's submission of a false accident report and successful attempt to coerce its employees into testifying falsely at the hearing plaintiff requested to contest his discharge. *Id.* Our Supreme Court, citing *Godette*, determined that the plaintiff's claims only asserted damages "resulting from the giving of false and perjured testimony" and held that the trial court properly dismissed the complaint because our courts do not recognize "any injury from false testimony upon which a civil action for damages can be maintained." *Id.* at 260-61, 116 S.E.2d at 727 (citation and quotation marks omitted).

In *Gillikin v. Sprinkle*, 254 N.C. 240, 118 S.E.2d 611 (1961), another case decided by our Supreme Court, the plaintiff was the administrator of the estate of an individual who had died in a motor vehicle accident after colliding with a vehicle owned by the county coroner. The plaintiff filed an action against the coroner, claiming that he had manufactured false evidence of the decedent's negligence and used his position to launch a fraudulent investigation of the accident in order to avoid possible liability as the owner of the other vehicle involved in the collision. *Id.* at 241, 118 S.E.2d at 613. Specifically, the plaintiff alleged that the defendant's "wicked and wrongful scheming and the wrongful use of the functions and prerogatives of his office as coroner, coercion of witnesses, . . . concealment of truth, [and] conspiracy with others to show the collision was caused by the negligence of [the decedent]" caused the trial court to dismiss his wrongful death claim against the defendant. *Id.* (internal quotation marks omitted). The Supreme Court rejected this argument, stating the following:

> [I]t appears plaintiff asserts tortious conduct by defendant to plaintiff's detriment by (1) initiating a conspiracy to suborn perjured testimony in an action to which plaintiff was a party, (2) fraud perpetrated by defendant on plaintiff by the perjured testimony, thereby preventing plaintiff from recovering for the wrongful death of his intestate, (3) defamation of plaintiff's intestate by asserting intestate was drunk and nude when he drove the automobile and by exhibiting derogatory pictures of intestate, and (4) prostitution of the office of coroner to defendant's personal advantage.

*Id.* at 243, 118 S.E.2d at 614. The Court concluded that the plaintiff could not recover damages for the alleged fraud perpetrated by the defendant and affirmed the trial court's dismissal of the complaint, holding that "[p]erjured testimony and the subornation of perjury are criminal offenses, but neither are torts supporting a civil action for damages." *Id.* (internal citations omitted).

Relying on this line of cases, our Court has likewise declined to recognize various civil claims premised on the commission of perjury and conspiracy to commit perjury. In *Strickland,* we concluded that based on the rule that there is no recognized cause of action grounded in perjury or subornation of perjury, the defendants were entitled to summary judgment as to claims that they "'knowingly provid[ed] false and misleading affidavits and other false information in order to secure the issuance of . . . bogus arrest warrants' " for the purpose of having the plaintiffs arrested. *Strickland,* 194 N.C. App. at 19, 669 S.E.2d at 72-73. Similarly, in *Hawkins v. Webster,* 78 N.C. App. 589, 591-92, 337 S.E.2d 682, 684 (1985), we held that the plaintiff's claims for damages resulting from the defendants' perjured testimony and their conspiracy to commit perjury were properly dismissed "[a]s the law of this State does not recognize a civil cause of action based on perjury."

Notably, we have applied this rule regardless of how a plaintiff has denominated his claim where, as here, the claim was grounded in an allegation of perjury. For example, in *Hawkins,* the plaintiff asserted sixteen causes of action, including claims for perjury, fraud, civil conspiracy, invasion of privacy, intentional infliction of emotional distress, and unfair and deceptive trade practices — all of which were "essentially derived from allegations that the defendants knowingly gave false information to the FBI and IRS agents . . .; that defendants gave perjured testimony at Hawkins' criminal trial; and that defendants' answers to the . . . civil complaints contained information that defendants knew to be false." *Id.* at 590, 337 S.E.2d at 683.

In affirming the trial court's dismissal of *all* of the plaintiff's claims — rather than merely those denominated as claims for perjury and civil conspiracy to give false testimony — we explained that with regard to those other claims, plaintiff had "simply taken allegations of perjury and relabeled them as recognized causes of action." *Id.* at 592, 337 S.E.2d at 684 ("Since the basis of the foregoing claims is civil perjury, a cause of action North Carolina has expressly declined to recognize, the entry of dismissal as to these claims was proper.").

Here, the essence of plaintiffs' amended complaint is that defendants committed fraud and conspiracy to commit fraud when they created

a fraudulent will and attempted to submit it for probate by preparing false affidavits and testifying falsely as to its authenticity. As such, these claims are barred by the line of cases originating with *Godette*.

Plaintiffs attempt to escape the effect of *Godette* and its progeny by relying on *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984), and *McCoy v. Justice*, 196 N.C. 553, 146 S.E. 214 (1929). Plaintiffs' reliance on these cases, however, is misplaced.

In *Henry*, the plaintiff, the administrator of the decedent's estate, asserted a civil conspiracy claim against the defendants, alleging that the defendants conspired to — and did in fact — destroy, falsify, and fabricate various medical records to conceal their negligence and thwart the successful prosecution of the plaintiff's wrongful death claim. *Henry*, 310 N.C. at 79, 310 S.E.2d at 329-30. Our Supreme Court stated the following in holding that plaintiff's cause of action did "not come within the purview of the cases which preclude private claims for perjury":

> Perjury is defined by statute and case law as a false statement knowingly made in a proceeding in a court of competent jurisdiction or concerning a matter wherein an affiant is required by law to be sworn as to some matter material to the issue or point in question. *The complaint in this case makes no allegations that the defendants perjured themselves by making false sworn statements.* The complaint alleging conspiracy was apparently filed *before any discovery in which sworn statements were made.* The complaint sets no precise time at which the alleged conspiracy and wrongful acts occurred other than alleging that they occurred after the investigation of Henry's death began. . . .

> Unlike the defendants in the *Gilliken* cases and their predecessors, at the time this action was brought the defendants were not subject to criminal sanctions for perjury. *From the pleadings it appears that at the time of the alleged conspiracy no court had jurisdiction and the defendants had not been required to give sworn statements.*

*Id.* at 89, 310 S.E.2d at 335-36 (emphasis added). For these reasons, the Court determined that "[t]he policy considerations often cited in support of the rule barring civil suits for perjury are inapplicable to this case." *Id.* at 89, 310 S.E.2d at 335.

Despite plaintiffs' assertions to the contrary, the facts of the present case are not analogous to those in *Henry*. Here, unlike in *Henry*,

plaintiffs' amended complaint alleges multiple instances of perjury. In paragraphs 10-12 and 15-17, plaintiffs allege that each defendant knowingly made false statements under oath — which is, of course, the definition of perjury — in two ways: (1) by submitting either a false "Affidavit of Subscribing Witnesses for Probate of Will" (in the case of Carlyle and Singletary) or a false "Oath/Affirmation" (in the case of Mrs. Gilmore); and (2) by testifying falsely during the February 2012 hearing on plaintiffs' motion to revoke probate. Moreover, in paragraphs 32-34, plaintiffs expressly refer to the above acts as "perjury." Thus, unlike in *Henry*, plaintiffs' tort claims all stem from allegations of perjury, and plaintiffs rely on their allegations of defendants' perjury and subornation of perjury in pleading the elements necessary to establish fraud and conspiracy to commit fraud.

Plaintiffs cite *McCoy* for the proposition that "regardless [of] whether someone has been charged or convicted of perjury, the commission of other bad acts subjects one to civil liability . . . ." *McCoy*, however, does not support this proposition. In *McCoy*, the plaintiff sought to vacate a prior judgment against him that was allegedly procured by "fraud, subornation of witnesses, suppression of evidence, and jury attaint." *McCoy*, 196 N.C. at 555, 146 S.E.2d at 215. Thus, unlike plaintiffs here, the plaintiff in *McCoy* was not seeking damages for the defendants' perjury — instead, he was only attempting to set aside a prior verdict that had been entered against him. *Id.* As *McCoy* does not concern civil actions for damages based on a defendant's perjury or subornation of perjury, we find it inapposite to our determination of the present case.

## IV. Claim for Obstruction of Justice

**[4]** For similar reasons, we believe the trial court was likewise correct in dismissing plaintiffs' claim for obstruction of justice. In *Henry*, our Supreme Court concluded that the plaintiff's complaint was improperly dismissed because the defendants' alleged actions of destroying, falsifying, and fabricating the plaintiff's medical records — if found — "would amount to the common law offense of obstructing public justice." *Henry*, 310 N.C. at 87, 310 S.E.2d at 334. In so holding, however, the Court specifically distinguished the facts of *Henry* from the *Godette* line of cases – highlighting the fact that at the time of the complaint in *Henry*, no court had jurisdiction over the case and the defendants had not been required to give any sworn statements. *Id.* at 89, 310 S.E.2d at 335.

As stated above, that is not the case here. Because the crux of their claim for obstruction of justice is defendants' alleged commission of perjury and/or subornation of perjury, dismissal of this claim was proper.

## V.  N.C. RICO Claim

[5] Finally, plaintiffs argue that the General Assembly — by enacting the N.C. RICO statute codified in N.C. Gen. Stat. § 75D-1 et seq. — has statutorily created a civil cause of action where a defendant has committed multiple instances of perjury (or subornation of perjury). We hold that the trial court properly dismissed plaintiffs' N.C. RICO claim because plaintiffs did not adequately plead all of the essential elements of that cause of action.

Pursuant to N.C. RICO, an "innocent person who is injured or damaged in his business or property" by a defendant's pattern of racketeering activity may bring a private cause of action for treble damages and attorney's fees. N.C. Gen. Stat. § 75D-8(c) (2011). Under the statute, racketeering activity "means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent under . . . Chapter 14 of the General Statutes . . . ." N.C. Gen. Stat. § 75D-3(c)(1) (2011). A pattern of racketeering activity is defined, in pertinent part, as follows:

> [A]t least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated and unrelated incidents, provided . . . at least one other of such incidents occurred within a four-year period of time of the other, excluding any periods of imprisonment, after the commission of a prior incident of racketeering activity.

N.C. Gen. Stat. § 75D-3(b). The scope of N.C. RICO is limited to cases where there is "an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain." N.C. Gen. Stat. § 75D-2(c) (2011).

"[T]o state a claim under the NC RICO Act, (1) an 'innocent person' must allege (2) an injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendant[s]." *In re Bostic Constr., Inc.*, 435 B.R. 46, 68 (Bankr. M.D.N.C. 2010). Here, plaintiffs' amended complaint fails to sufficiently allege both the "injury to business or property" element and the "pecuniary gain to defendants" element.

## A. Injury to Business or Property Element

Plaintiffs contend that they were injured "by their expenses associated with hiring a handwriting expert and moving to revoke probate of the Fraudulent Will and to prosecute the caveat." These types of expenses, however, do not constitute an injury in fact sufficient to satisfy this element of an N.C. RICO claim.

In *Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F.Supp.2d 817 (E.D.N.C. 2005),[2] plaintiff brought a federal RICO claim alleging that it was not awarded a state fair contract as a result of the defendants' racketeering activity. *Id.* at 833. The plaintiff claimed that its resulting injury occurred by virtue of the fact that it incurred legal fees and costs during its pursuit of a bid protest at the Office of Administrative Hearings. *Id.* The court held that

> these legal fees and costs are not direct injury flowing from defendants' illegal conduct, but rather, at best, indirect injury which plaintiff did not automatically incur, but chose to incur, in mitigating the effect of defendants' conduct. Stated differently, plaintiff's choice to pursue a bid protest, however justified, was an independent cause which required the payment of legal fees and costs. Accordingly, while the illegal conduct by defendants may have been the cause-in-fact of plaintiff's legal fees and costs, it was not the proximate cause of such fees and costs.

*Id.* (internal citations and quotation marks omitted).

As in *Strates*, plaintiffs here made a conscious choice to take action to mitigate the effect of defendants' unlawful conduct by filing an action to revoke probate and by employing a handwriting expert to analyze the purported will. However appropriate these actions may have been, as in *Strates*, these expenses were not proximately caused by defendants' illegal behavior and, therefore, are not sufficient to satisfy this element of a claim under N.C. RICO.

Plaintiffs' reliance on *Gram v. Davis*, 128 N.C. App. 484, 495 S.E.2d 384 (1998), is misplaced. In *Gram*, a legal malpractice action, the plaintiff

---

2. This Court has looked to federal caselaw interpreting the injury requirement of a federal RICO action when analyzing the analogous injury provision of N.C. RICO. *See Kaplan v. Prolife Action League of Greensboro*, 123 N.C. App. 720, 729 n.3, 475 S.E.2d 247, 254 n.3 (1996) (applying federal caselaw to N.C. RICO claim because there is no "legally significant distinction" between the state and federal injury to business or property provisions), *aff'd per curiam*, 347 N.C. 342, 493 S.E.2d 416 (1997).

retained an attorney to complete a title search for two parcels of land that he intended to use in developing a subdivision. *Id.* at 485, 495 S.E.2d at 385. The plaintiff's attorney determined that one of the parcels — which was part of an existing subdivision — was restricted to residential use only but erroneously advised the plaintiff that the construction of an access road would be in compliance with the restriction. Upon the completion of the road, the plaintiff discovered that the restriction did, in fact, prohibit use of the parcel to access another subdivision. *Id.* The plaintiff then hired a second attorney to remove the encumbrance from the property. *Id.* at 486, 495 S.E.2d at 386. In determining that the plaintiff could recover the attorney's fees he incurred in freeing the parcel from the encumbrance, we held:

> Although the general rule in North Carolina is that attorneys' fees and other costs associated with litigation are not recoverable in a legal malpractice action absent statutory liability, this rule does not apply to bar recovery for costs, including attorneys' fees, incurred by a plaintiff to remedy the injury caused by the malpractice.

*Id.* at 489, 495 S.E.2d at 387 (internal citations omitted).

Recently, this Court expressly declined to extend the holding in *Gram* beyond the legal malpractice realm. *See Robinson v. Hope,* ___ N.C. App. ___, ___, 719 S.E.2d 66, 69 (2011) ("[W]e believe the holding in *Gram* should be limited to the circumstances of that case, namely attorney malpractice actions. Were we to extend the exception . . . such a holding would effectively erode the long-standing rule in North Carolina that attorneys' fees are not recoverable as an item of damages absent statutory authority for such an award . . . ."). Thus, we find *Gram* inapposite to our analysis of the present case.

## B. Pecuniary Gain Element

"[T]he scope of NC RICO is limited to cases where pecuniary gain is derived from organized unlawful activity prohibited under the statute. Put simply, section 75D-2(c) requires the aggrieved party to establish a causal connection between the alleged pecuniary gain and [the] defendant's activities which allegedly violate section 75D-4." *Kaplan v. Prolife Action League of Greensboro,* 123 N.C. App. 720, 724, 475 S.E.2d 247, 251 (1996), *aff'd per curiam,* 347 N.C. 342, 493 S.E.2d 416 (1997). Plaintiffs' amended complaint altogether fails to allege any pecuniary gain by defendants as a result of the conduct alleged therein. Accordingly, for this reason as well, plaintiffs have failed to plead a valid N.C. RICO claim for purposes of Rule 12(b)(6).

## Conclusion

For the reasons stated above, we affirm the trial court's order dismissing plaintiffs' amended complaint.

AFFIRMED.

Judges McGEE and GEER concur.