Elhulu v. Alshalabi, 2025 NCBC 45.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20CVS012827-590

MARWAN ELHULU; KHALID
ALNABULSI; and MOHAMMED
SAQQA,

        Plaintiffs,

v.

FADEL ALSHALABI; OMNI
HOLDING GROUP, LLC; and
EIYAD ISHNINEH,

        Defendants.

**ORDER AND OPINION ON
DEFENDANT ISHNINEH'S
MOTION TO DISMISS**

*The Law Office of William L. Sitton, Jr., by William L. Sitton, for Plaintiffs Marwan Elhulu, Khalid Alnabulsi, and Mohammed Saqqa.*

*Bennett & Guthrie, PLLC, by Joshua H. Bennett & Mitchell H. Blankenship, for Defendant Eiyad Ishnineh.*

*Parry Law, PLLC, by Jonah A. Garson and K. Alan Parry, for Defendant Fadel Alshalabi.*

*Jerry Meek, PLLC, by Gerald F. Meek, for Defendant Omni Holding Group, LLC.*

Conrad, Judge.

1. Defendant Eiyad Ishnineh's motion to dismiss is pending. For the following reasons, the Court **GRANTS** the motion.

2. **Background.** This is a fraud case. In 2016, Plaintiffs Marwan Elhulu, Khalid Alnabulsi, and Mohammed Saqqa invested nearly $1 million in a medical laboratory company called Omni Holding Group, LLC, which they now believe to be a sham. They allege that Omni's founder, Fadel Alshalabi, induced them to invest with promises that they would not only recoup their investments in short order but

also earn generous distributions as members of the company. But the promised bonanza never materialized. Apart from two insignificant checks, all that Plaintiffs allegedly got from Alshalabi were excuses and false assurances, and even those trailed off in 2018. Frustrated and distrustful, Plaintiffs sued Omni and Alshalabi in 2020, seeking damages, declaratory relief, and access to company records. (*See, e.g.*, 3d Am. Compl. ¶¶ 9, 12, 22, 34, 45, 63, 73, ECF No. 137.)

3. Since then, this case has progressed in fits and starts. At the parties' request, the Court stayed most discovery after the federal government indicted Alshalabi for Medicare and Medicaid fraud (a proceeding that eventually led to his conviction). In limited discovery exempted from the stay, Plaintiffs obtained Omni's bank records and spotted a series of suspicious transactions involving Ishnineh. To probe further, Plaintiffs sought documents from Ishnineh and deposed him. With that information in hand, and with the Court's leave, Plaintiffs amended their complaint for a third time to add him as a defendant. This addition is the focus of the present dispute. (*See, e.g.*, Order Jt. Mot. Stay, ECF No. 87.)

4. As alleged, Ishnineh had few interactions with Plaintiffs. He supposedly attended the meeting in which Alshalabi solicited their investments and later signed Elhulu's certificate of membership. That's about it. There's no allegation that Ishnineh participated in the solicitation or communicated with Plaintiffs at that time or in the years since. (*See* 3d Am. Compl. ¶¶ 10, 23.)

5. Most allegations instead concern Ishnineh's relationship with Omni and Alshalabi. Like Plaintiffs, Ishnineh is a member of Omni. Unlike Plaintiffs, he

allegedly bought his interest at a discount, received about $1 million in payouts, had a close relationship with Alshalabi, and knew that Omni had no property, no employees, and no business. More disquieting, though, are allegations that Ishnineh laundered money for Omni and Alshalabi by wiring large sums to Jordan and making at least one phony loan that was paid and repaid in just a few days' time. Ishnineh was supposedly well positioned to launder money because he owned a convenience store with a sizeable cash flow. (*See* 3d Am. Compl. ¶¶ 58, 59.)

6. Plaintiffs assert two claims for relief against Ishnineh. First, they claim that Ishnineh fraudulently concealed how much he paid for his interest in Omni, his wire transfers of cash from Omni to recipients in Jordan, and his suspiciously short-term transfers of large sums to and from Omni. Second, they claim that Ishnineh's fraud and money laundering amount to a pattern of racketeering activity in violation of North Carolina's Racketeer Influenced and Corrupt Organizations ("RICO") Act. (*See, e.g.*, 3d Am. Compl. ¶¶ 59, 77, 100.)

7. Ishnineh has moved to dismiss all claims against him. Although he initially raised insufficiency of process and service of process as grounds for dismissal, he has since abandoned that argument. He maintains, however, that the third amended complaint fails to state a claim under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (*See* ECF No. 139.) The motion is fully briefed, and the Court held a hearing on 31 July 2025.

8. **Analysis.** A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation

and quotation marks omitted). In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).

9. Of the many arguments raised by Ishnineh, one stands out. He contends that Plaintiffs' allegations, even if true, do not show that he had a duty to disclose the information that he is supposed to have fraudulently concealed. The Court agrees. Absent a duty to disclose, the claim for fraudulent concealment is defective. And because the allegations of fraud are integral to the RICO claim, that claim fails as well.

10. "[S]ilence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at \*8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976)). Thus, to state a claim for fraudulent "concealment or nondisclosure," a plaintiff must allege with particularity that the defendant "had a duty to disclose material information." *Id.*; *see also* N.C. R. Civ. P. 9(b) (requiring allegations of fraud to "be stated with particularity"). A duty to disclose arises when the parties are in a fiduciary relationship, when one party "has taken affirmative steps to conceal material facts from the other," or when "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297–98 (1986).

11. Nowhere does the third amended complaint state—even in a conclusory way—that Ishnineh had a duty to disclose. It simply isn't there.

12. Nor does the third amended complaint allege facts that might give rise to a duty to disclose. Plaintiffs contend, in conclusory fashion and without citation, that Ishnineh took affirmative steps to conceal material information. Yet they allege no specific affirmative acts beyond the nondisclosure itself. As this Court has observed many times, "[n]ondisclosure alone is not an affirmative act of concealment." *Maxwell Foods v. Smithfield Foods*, 2023 NCBC LEXIS 20, at *7 (N.C. Super. Ct. Feb. 3, 2023); *see also ALCOF III Nubt., L.P. v. Chirico*, 2024 NCBC LEXIS 110, at *10 (N.C. Super. Ct. Aug. 21, 2024); *TAC Invs., LLC v. Rodgers*, 2021 NCBC LEXIS 76, at *9 (N.C. Super. Ct. Sept. 10, 2021); *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at *31 (N.C. Super. Ct. Nov. 4, 2020); *Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *23 (N.C. Super. Ct. Dec. 29, 2016).

13. Plaintiffs also contend that Ishnineh had knowledge of a latent defect in negotiations that they, being unaware, could not have discovered through reasonable diligence. But Plaintiffs and Ishnineh weren't negotiating. As alleged, Ishnineh did not solicit Plaintiffs' investments in Omni. In fact, there is no allegation that he *ever* communicated with them. *See, e.g.*, *ALCOF*, 2024 NCBC LEXIS 110, at *11 (deeming allegations that defendant "knew certain facts and remained silent" insufficient to establish a duty to disclose). What's more, there is no allegation that Ishnineh denied Plaintiffs the opportunity to investigate or that Plaintiffs could not have discovered the truth through reasonable diligence. *See, e.g.*, *TAC*, 2021 NCBC LEXIS 76, at *10

("When a fraud claim is based upon failure to disclose a latent defect, Rule 9(b) requires that the complaint allege that the plaintiff was denied any opportunity to investigate, or that it could not have discovered the allegedly concealed facts by exercise of its own reasonable diligence." (cleaned up)).

14. Absent a duty to disclose, the claim for fraudulent concealment is untenable. Plaintiffs do not allege or argue that Ishnineh made any fraudulent representations. Nor do they argue that he is liable for Alshalabi's fraudulent representations under a theory of conspiracy or facilitation of fraud. Accordingly, the Court grants the motion to dismiss the fraud claim.

15. It follows that Plaintiffs have failed to state a RICO claim as well. Essential to a RICO claim is a pattern of racketeering activity, meaning "two or more" predicate "acts of organized unlawful activity or conduct." *Gilmore v. Gilmore*, 229 N.C. App. 347, 356 (2013) (cleaned up); *see also* N.C.G.S. § 75D-8(c). Plaintiffs allege mail fraud, wire fraud, and money laundering as the requisite predicate acts. As best the Court can tell, the allegations of mail and wire fraud are the same as the allegations of fraudulent concealment and, thus, suffer the same pleading defects. *See Tucker v. Clerk of Ct. of Forsyth Cnty. ex rel. Frye*, 2019 N.C. App. LEXIS 866, at *16 (N.C. Ct. App. Oct. 15, 2019) (affirming dismissal of RICO claim predicated on deficient fraud claim); *Anderson v. Coastal Cmtys. at Ocean Ridge Plantation, Inc.*, 2012 NCBC LEXIS 35, at *39–40 (N.C. Super. Ct. May 30, 2012) (dismissing overlapping fraud and RICO claims). With that, all that remains is the alleged money laundering—a single predicate act, not a pattern of activity. *See Zavala v. Wal-Mart Stores Inc.*, 691

F.3d 527, 543 (3d Cir. 2012) (concluding, under federal law, that "a single predicate act is not a pattern of predicate acts and therefore cannot support a RICO claim"). The Court therefore grants the motion to dismiss the RICO claim.

16.    In his motion, Ishnineh offers several alternative grounds for dismissal. He argues, for example, that claims based on acts that occurred as early as 2016 are time-barred under the governing statutes of limitations. He also argues that the RICO claim impermissibly rests solely on allegations "involving fraud in the sale of securities," which the statute exempts. N.C.G.S. § 75D-8(c); *see also Campbell v. Bowman*, 2005 N.C. App. LEXIS 2444, at *15 (N.C. Ct. App. Nov. 15, 2005) ("[T]he General Assembly did not intend that an investor's claim to recoup money lost through a failed financial venture with no larger criminal scope could be the basis of a RICO claim."). These are serious arguments, but having dismissed the claims for failure to allege a duty to disclose, the Court need not reach them.

17. **Conclusion.** For all these reasons, the Court **GRANTS** the motion to dismiss. In its discretion, and given that Plaintiffs have already amended their complaint three times, the Court dismisses the claims against Ishnineh with prejudice.

       **SO ORDERED**, this the 13th day of August, 2025.

                 /s/ Adam M. Conrad
                 Adam M. Conrad
                 Special Superior Court Judge
                 for Complex Business Cases